**WASHINGTON BREWERS INSTITUTE et al. v. UNITED STATES.**

No. 10303.

Circuit Court of Appeals, Ninth Circuit.

Aug. 13, 1943.

Writ of Certiorari Denied Oct. 25, 1943.

See 64 S.Ct. 89, 88 L.Ed. ——.

---

Lenihan & Ivers, of Seattle, Wash., for appellants other than Regal Amber, William P. Baker, Acme Breweries, and Karl F. Schuster.

E. L. Skeel and Harry Henke, Jr., both of Seattle, Wash., for appellants Olympia Brewing, P. G. Schmidt, and A. D. Schmidt.

Bogle, Bogle & Gates, Cassius E. Gates, and Ray Dumett, all of Seattle, Wash., for appellants Columbia Breweries, East Idaho Brewing Co., J. F. Lanser, H. P. Lawton, and E. Louis Powell.

Brobeck, Phleger & Harrison, Moses Lasky, and Emil Hoerchner, all of San Francisco, Cal., for appellants California State Brewers Institute and James G. Hamilton.

Chadwick, Chadwick & Mills and Stephen F. Chadwick, all of Seattle, Wash., for appellants Seattle Brewing, Spokane Brewery, W. H. Mackie, R. Besse, E. G. Sick, and G. W. Allen.

James A. Brown, of Spokane, Wash., for appellants Bohemian Breweries and E. F. Theis.

C. Stanley Skiles, of Boise, Idaho, for appellants Idaho Brewers and S. T. Collins.

Edwin Snow, of Boise, Idaho, for appellant Overland Beverage Co.

J. A. Howell, of Ogden, Utah, for appellants Becker-Products Co., Gus L. Becker and C. C. Wilcox.

John M. Pipes, of Portland, Ore., for appellants Brewers Institute of Oregon, G. F. Paulsen, Interstate Brewing Co. and G. V. Uhr.

Pillsbury, Madison & Sutro, of San Francisco, Cal., for appellants Pacific Brewing and J. E. Knapp.

R. M. J. Armstrong and Albert L. Campodonico, both of San Francisco, Cal., for appellants Regal Amber Brewing and W. P. Baker.

Norman A. Eisner, of San Francisco, Cal., for appellants Acme Breweries and Karl F. Schuster.

Tom C. Clark, Asst. Atty. Gen., Charles S. Burdell, Sp. Asst. to Atty. Gen., and J. Charles Dennis, U. S. Atty., John S. Harlow, Robert McFadden, and Allan Trumbull, Jr., Sp. Attys., Department of Justice, all of Seattle, Wash., for appellee.

Before GARRECHT, HANEY and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellants are (a) twenty brewing concerns engaged in the manufacture, distribution, and sale of beer; (b) four statewide "institutes" formed by these brewing companies; and (c) thirty-two individual officers thereof. They were jointly indicted on charges of violating §§ 1 and 3 of the Sherman Act, 15 U.S.C.A. §§ 1 and 3. They demurred to the indictment and the demurrers were overruled. Pleas of nolo contendere were thereupon entered and there followed a judgment imposing fines. On appeal it is claimed that the court committed error in overruling the demurrers.

The commerce described in the indictment comprises the sale and shipment of beer by the defendant breweries, located within the states of Washington, Oregon, Idaho, and California, to importers and dis-

tributors operating in the same area and in the Territory of Alaska. The defendants are charged with engaging in a combination and conspiracy to raise, fix, stabilize and maintain uniform, artificial, and noncompetitive prices for beer, with making sales pursuant to such combination, and with coercing wholesalers and retailers into adhering to the prices and terms so agreed upon. It is charged that they granted only such refunds and allowances for bottles and containers as were fixed in concert. There are extensive allegations as to the means used to effectuate the conspiracy, but these need not be noticed in detail.

While most of the parties appealing have joined in a single brief, several have filed separate briefs. The arguments for reversal proceed largely upon ·variations of the same theme, namely, that since the adoption of the Twenty-First Amendment[1] the Federal Government has no jurisdiction over commerce among the states in intoxicants, or, at least, the Federal Government is without authority to legislate in that field when any state or territory has occupied the field by appropriate legislative action. Some of the appellants do not urge the first proposition but rely only an variations of the second, arguing that where states have regulated the importation of intoxicants, that commodity must, as a matter of law, be treated as an article in intrastate commerce.

In three of the states concerned, namely, Washington, Oregon, and Idaho, the sale of distilled liquor is a state monopoly, and highly restrictive systems in respect of the traffic in beer have been adopted.[2] California has no state dispensary system but has undertaken extensively to regulate the traffic in intoxicants, including beer.[3] As regards malt liquor a common character-istic of the legislation is the separation of manufacturing and wholesaling from the retail traffic, plus prohibition of the means of retail control. Manufacturers, importers, and wholesalers are required to obtain licenses, the extension of credit to retailers is forbidden or regulated, and advertising greatly restricted. In the three northwest states liquor control boards with extensive regulatory authority were set up after the adoption of the Amendment. In California the State Board of Equalization is impowered under the provisions of various statutes to make rules in respect of the traffic. Zones have been defined and established by these bodies, and the importer, wholesaler, and· manufacturer are required by statute or regulation publicly to post beer prices for each zone, together with the amount of allowances for the return of empty containers. The posted prices, while they remain in effect, may not be departed from, and may not be changed within a period of days from the time of new postings. Prices involving quantity discounts are prohibited, and agreements, or memoranda thereof, between the brewer on the one hand and the importer or wholesaler on the other are required to be publicly filed. There are strict regulations governing the repurchase of distress beer.

1. The decisions of the Supreme Court since the adoption of the Twenty-First Amendment recognize the practically unlimited power of the states to regulate or prohibit the importation of alcoholic beverages, irrespective either of the commerce or the equal protection clause of the Constitution.[4] In the Young's Market case a fee exacted of importers of beer was held within state competence notwithstanding the imposition would have been void as a direct burden on commerce in the absence of the Amendment. In Mahoney v. Joseph

---

[1] "Section 1. The eighteenth article of amendment to the Constitution of the United States is hereby repealed.

"Sec. 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited. * * * "

[2] Washington State Liquor Act, Rem. Rev.Stat. of Wash. §§ 7306—1 to 7306—97a; Oregon Liquor Control Act, Ore. Comp.Laws §§ 24-101 to 24-514; Idaho Liquor Act, Idaho Laws, 1939, p. 465, c. 222, and p. 584, c. 242, as amended in Idaho Laws, 1941, p. 20, c. 10.

[3] California Alcoholic Beverage Control Act, Calif.Gen.Laws No. 3796.

[4] State Board of Equalization v. Young's Market Co., 299 U.S. 59, 57 S. Ct. 77, 81 L.Ed. 38; Mahoney v. Joseph Triner Corp., 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424; Indianapolis Brewing Co. v. Liquor Control Commission, 305 U.S. 391, 59 S.Ct. 254, 83 L.Ed. 243; Joseph S.· Finch & Co. v. McKittrick, 305 U.S. 395, 59 S.Ct. 256, 83 L.Ed. 246; Ziffrin, Inc., v. Reeves, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128.

Triner Corp. it was urged that a local statute requiring registration in the patent office of brands of liquors as a condition precedent to their importation was violative of the equal protection clause, where no similar registration was required of brands locally produced. The court was of opinion, however, that the equal protection clause is not now applicable to imported intoxicants. The remaining decisions cited adhere to or logically extend this doctrine. In short, since the adoption of the Amendment the states are free to enact any laws concerning the transportation or importation of alcoholic beverages which they deem appropriate, unfettered by the power delegated to the Federal Government to regulate commerce among the states and with foreign nations.

But we think the Amendment does not deprive the national government of all authority to legislate in respect of interstate commerce in intoxicants.[5] There is nothing in the verbiage of the provision and little in its legislative history to support so broad a view. That Congress construed the Amendment more narrowly is evidenced by its prompt passage of the Federal Alcohol Administration Act, August 29, 1935, 49 Stat. 977, 27 U.S.C.A. § 201 et seq. The purpose of that Act, as stated in § 3, was "effectively to regulate interstate and foreign commerce in distilled spirits, wine, and malt beverages, to enforce the twenty-first amendment, and to protect the revenue and enforce the postal laws with respect to distilled spirits, wine and malt beverages."[6]

In Jameson & Co. v. Morgenthau, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189, the Federal Alcohol Administration Act was attacked upon the ground that the Amendment gives to the states complete and exclusive control over commerce in intoxicants, unlimited by the commerce clause; hence that Congress no longer has authority to control the importation of these commodities. The case had been heard below by a court of three judges under § 3 of the Act of August 24, 1937, 28 U.S.C.A. § 380a. The Supreme Court thought that Act inapplicable unless the questions raised as to the constitutional validity of an act of Congress are substantial. It summarily disposed of the case and of the jurisdiction of the three-judge court by stating that the contention of the complainant was without substance. The continuing applicability of the commerce clause to interstate traffic in intoxicants has likewise been affirmed in several of the circuits.[7]

2. Originally the regulation or suppression of the liquor traffic was a matter solely of local concern, except insofar as the authority of the states was circumscribed by the commerce clause.[8] To remedy the difficulties experienced by the states in the latter respect Congress in 1890 passed the Wilson Original Packages Act[9] and in 1913 the Webb-Kenyon Act.[10] Then followed the ill-starred experiment in national prohibition through constitutional amendment. In 1933 the original status was restored, and in effect the constitutional restriction upon the power of the states was deleted by adoption of the Twenty-First Amendment. Clear and explicit as is its language, that Amendment hardly admits of construction. While it does not in terms transfer power to the states it does free them from a previous constitutional restraint. As a matter of fundamental national law, the Amendment prohibits the transportation or importation of intoxicants into any state or territory for delivery or use therein in violation of the laws thereof. Interstate commerce in liquor, not in violation of state laws, was left, as before, a matter of national concern.

The Sherman Act was enacted under authority of the commerce clause and is necessarily of no greater dignity than that clause. The evils at which it is aimed

[5] Cf. Adams Exp. Co. v. Commonwealth of Kentucky, 238 U.S. 190, 35 S. Ct. 824, 59 L.Ed. 1267, L.R.A.1916C, 273, Ann.Cas.1915D, 1167.

[6] Cf. also the Collier Act, 1935, 49 Stat. 877, § 202(b), 27 U.S.C.A. § 122; Liquor Enforcement Act of 1936, 49 Stat. 1928, 18 U.S.C.A. §§ 388–390 and 27 U.S.C.A. §§ 221–228; Securities Act of 1933, 48 Stat. 74, 15 U.S.C.A. § 77a et seq.; Federal Trade Commission Act, 52 Stat. 111, 15 U.S.C.A. § 41 et seq.

[7] Arrow Distilleries, Inc., v. Alexander, 7 Cir., 109 F.2d 397; Hayes v. United States, 10 Cir., 112 F.2d 417; United States v. Colorado Wholesale Wine and Liquor Dealers Ass'n, Inc., 47 F.Supp. 160; Schlitz Brewing Co. v. Johnson, 6 Cir., 123 F.2d 1016.

[8] Cf. The License Cases, 46 U.S. 504, 12 L.Ed. 256; Bowman v. Chicago & N. W. R. Co., 125 U.S. 465, 8 S.Ct. 1062, 31 L.Ed. 700; Leisy v. Hardin, 135 U. S. 100, 10 S.Ct. 681, 34 L.Ed. 128.

[9] 26 Stat. 313, 27 U.S.C.A. § 121.

[10] 37 Stat. 699, 27 U.S.C.A. § 122.

differ from the abuses attempted to be corrected by the state laws here in question. The one seeks to stamp out private monopoly and to interdict combinations in restraint of trade, the others to correct abuses inherent in the liquor traffic. But modern legislation having the latter purpose tends toward the abolition of many competitive practices found by experience to be productive of evils. Thus the broad theory of the Sherman Act—that trade should be free of artificial restraints—is in many respects incompatible with the policy of state liquor-control legislation; and wherever such conflicts exist the Sherman Act must give way, just as the commerce clause itself gives way in identical circumstances. Where invocation of that Act tends to hamper or interfere with the enforcement of state laws regulatory of the transportation or importation of intoxicants, the Act is unenforceable. By the terms of its own fundamental law the national government has disabled itself from prosecuting as an offense that which a state has commanded or implicitly encouraged as a means of controlling the traffic in intoxicants within its borders.

█ But we should be slow to assume that these states have undertaken to sanction combinations among producers having as their purpose the fixing of uniform and artificial beer prices, and appellants do not affirm that. Indeed, as certain of appellants themselves point out, the states have laws forbidding restraints of trade or the fixing or maintaining of artificial and noncompetitive prices for commodities generally, which laws are applicable to beer as well as to other commodities.[11]

The state laws regulatory of the traffic in malt liquors are directed toward individual conduct. Obedience to them is not rendered difficult or impracticable by the enforcement of a federal statute declaring price-fixing combinations unlawful. In arriving at prices to be charged for their commodity brewers are not required by the states to act otherwise than as free agents, nor are they expected to confederate together with the design of suppressing legitimate competition in respect either of quality or of price. We regard it as significant that no state has appeared in this case as a friend of the court to protest the enforcement of the Sherman Act—a procedure which one would expect the states to follow if this prosecution were looked upon as inimical to their systems of control.

█ 3. It is said with some truth that the indictment charges appellants with conspiring to influence the formulation of state policy and with combining to police the enforcement of state laws. Certainly if this were all they were accused of it would not be enough; for in light of the Twenty-First Amendment conduct of that sort would not constitute a federal offense, notwithstanding it might otherwise be indictable as an unlawful conspiracy under the Sherman Act. We know of no reason why brewers, like other people, may not jointly advocate state legislation thought by them to be desirable, nor why they may not, singly or in concert, aid the authorities in the policing of any legislation which it is within the competency of the states to adopt.

But, as has been seen, appellants are charged with combining to fix and with the

11 (a) California: Cartwright Anti-Trust Act, Calif.Gen.Laws, No. 8702, now §§ 16700 to 16758, Cal. Business & Professions Code, St.Cal.1941, pp. 1834–1838, prohibits illegal trusts and combinations. The Unfair Practices Act, Calif.Gen.Laws No. 8781 and the Fair Trade Act, Calif.Gen.Laws, No. 8782, now §§ 16900 to 16905 of Cal. Business & Professions Code, St.Cal.1941, pp. 1838–1839, prohibit sale of commodities below certain prices.

(b) Idaho: Idaho Constitution Art. 11, § 18; Idaho Code, §§ 17-4013, and 47-101 to 47-117.

(c) Oregon: Anti-Price Discrimination Act (Ore.Comp.Laws, §§ 43-101 to 43-111); State Fair Trade Act (Ore. Comp.Laws, §§ 43-401 to 43-405).

(d) Washington: Monopolies, trusts and price-fixing agreements are forbidden by Article XII, § 22 of the Washington Constitution. Non-profit corporations forfeit their charters for attempting to restrain trade, Rem.Rev. Stat. of Wash. § 3898. Conspiracies in restraint of trade are punishable criminally, Rem.Rev.Stat. of Wash. § 2382. The state also has a fair trade act, Rem. Rev.Stat. of Wash. §§ 5854—1 to 5854—36.

(e) Alaska: The following provisions appear in § 3271 of the Compiled Laws of Alaska: "So much of the common law as is applicable and not inconsistent with the Constitution of the United States or with any law passed or to be passed by Congress or the Legislature of Alaska, is adopted and declared to be law in the Territory."

concerted fixing of prices; and by their pleas they admit the charge. We find nothing in state law or regulation to sanction combinations of that sort.

Affirmed.

HANEY, Circuit Judge, did not participate in the consideration or decision of this case.