**CASTLEWOOD INTERNATIONAL COR- PORATION, a Florida Corporation, Plaintiff-Appellant,**

v.

**William SIMON, As Secretary of the Treasury of the United States and Rex Davis, as Director of the Bureau of Alcohol, Tobacco and Firearms, Defendants-Appellees.**

No. 75–4445.

United States Court of Appeals, Fifth Circuit.

June 6, 1979.

Tobias Simon, Elizabeth duFresne, Miami, Fla., for plaintiff-appellant.

Robert W. Rust, U. S. Atty., Patricia Jean Kyle, Asst. U. S. Atty., Miami, Fla., Ronald Williams, Atty., ATF, Washington, D. C., for defendants-appellees.

Before THORNBERRY, GODBOLD and FAY, Circuit Judges.

FAY, Circuit Judge:

Plaintiff-appellant, Castlewood International Corporation (Castlewood), is incorporated under and licensed by the State of Florida as a retail vendor of alcoholic beverages. Castlewood is among the largest retail vendors in Florida, with more than ninety retail outlets throughout the state. In December, 1974, Castlewood brought suit in the United States District Court for the Southern District of Florida seeking declaratory and injunctive relief against enforcement in Florida of rulings issued by the Bureau of Alcohol, Tobacco and Firearms (ATF) of the United States Department of Treasury. The District Court granted summary judgment for the United States. Castlewood appeals. For reasons more fully developed below, we reverse.

■ The Florida liquor industry is governed by a complex and comprehensive statutory scheme, F.S.A. § 561.01 et seq. The industry is statutorily divided into three separate and distinct levels: (1) the manufacturer, (2) the wholesaler, and (3) the retail vendor. As a retail vendor, Castlewood may purchase only from Florida wholesalers (distributors), F.S.A. § 561.-14(3). F.S.A. § 561.42(1) provides that no licensed distributor shall "assist any vendor by any gifts or loans of money or property of any description or by the giving of any rebates of any kind whatsoever." Distributors may, however, give "trade discounts in the usual course of business," F.S.A. § 561.-42(6), provided that: (1) the discount be given simultaneously with the sale, and (2)

the distributor offers the same discount to all vendors buying similar quantities of liquor. F.S.A. § 561.01(10). Thus, under Florida's regulatory scheme, the distributor and the retailer are free to negotiate a mutually acceptable selling price regardless of whether the price is at, above or below the distributor's cost. Once a price has been agreed upon, the wholesaler is obligated to treat all retailers fairly and equally by offering the same price discount to all retail vendors. This so-called "Tied House Evil" law prevents a wholesaler from giving a substantial discount to a particular retail vendor, thereby eliminating discriminatory pricing and trade favoritism.

The Federal Alcohol Administration Act, 27 U.S.C. § 201 et. seq. regulates manufacturers and wholesalers, but not retail vendors, of alcoholic beverages. The federal Tied House Evil Law, 27 U.S.C. § 205(b), prohibits manufacturers and wholesalers from giving any money or other things of value to a retail vendor. In 1954, the Internal Revenue Service issued Rev.Rul. 54–161, 1951–1 C.B. 338, as a guideline to the industry to indicate when a violation of 27 U.S.C. § 205(b) might occur.[1] In 1974, ATF issued an "amplification" of Rev.Rul. 54–161 which required a reasonable relationship between a discount and a savings in cost accruing to a distributor before a wholesaler could grant any discount to a retailer. ATF Rule 74–6. ATF stated that unless a wholesaler could specifically justify otherwise, any price charged a retail vendor which was less than a wholesaler's "laid-in cost plus total operating cost" would be considered a violation of the Tied House Evil Law.[2] The amplification was designed

---

1. Rev.Rul. 161, 1954–1 Cum.Bull. 338. The ruling indicated that so-called free goods, discounts, rebates, refunds, and price reductions given to retailers pursuant to an agreement made at the time of sale are merely methods used to arrive at an agreed price and as such do not come within the purview of the Federal Alcohol Administration Act. The ruling did provide, however, that if free goods, discounts, rebates, etc., are such that the pricing aspect is merely a subterfuge, the transaction would constitute a "gift" within the meaning of 27 U.S.C. § 205(b)(3).

2. ATF Ruling 74–6 provided that:
   in considering whether a discount is in fact a method of arriving at an agreed sales price and not a subterfuge, the Bureau holds there must be a reasonable relationship between the discount and the purpose for which it is granted, i. e., a discount given in connection with a volume purchase must bear a reasonable relationship to the savings and cost accruing to the supplier in the manufacture, sale or delivery of the product.
   This ruling has been amended since its promulgation. However, the subsequent rulings still

to prevent "discounts" from being used by wholesalers as a device for giving prohibited financial assistance to retail vendors.

Plaintiffs sued to declare void and enjoin enforcement of the amplification ruling. Both parties stipulated that no genuine issues of material fact were in dispute and the district court considered the matter on defendant's motion for summary judgment. The district court, relying on an interpretation of the Florida law provided by the First District Court of Appeals of that state, held that there was no conflict between the Florida law and ATF Rul. 74–6. Moreover, the district court alternatively considered the conflict allegations and held that even if a conflict were found to exist, the federal rulings, by virtue of the Commerce Clause of the Constitution, must prevail.

Desirous of a definitive interpretation of the Florida Statute, we certified the following question to the Supreme Court of Florida:

> Whether, under Florida's comprehensive regulatory scheme for the alcoholic beverage industry, prices charged by wholesalers to retailers must bear some relationship to, and be at least equal to laid-in cost, or whether a wholesaler may sell to a retailer at any price, regardless of laid-in cost, provided only that all discounts are given at the time of sale and the same discount is available to all purchasers of similar quantities of alcoholic beverages.

The Florida Supreme Court held that "under Florida law a wholesaler may sell to a retailer on the basis of a discount given at the time of sale and made available to all vendors buying similar quantities, regardless of laid-in cost or the savings attributable to quantity sales." *Castlewood International Corp. v. Simon,* Fla., 367 So.2d 613 (1979), *rehearing denied,* (Mar. 12, 1979).

Armed with this interpretation of the Florida Statute, it is apparent that the two regulatory schemes are in conflict as the federal policy creates a floor on wholesale prices below which prices, acceptable under the Florida scheme, may not go. We must therefore address the issue of which scheme Florida wholesalers must follow.

Liquor occupies a unique position among items of commerce insofar as the Commerce Clause is concerned. Its unique position is due to the Twenty-first Amendment, the second section of which provides:

> The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

U.S.Const. amend. XXI, § 2.

Since the founding of our Republic, power over regulation of liquor has ebbed and flowed between the federal government and the states. *In the License Cases,* 46 U.S. (5 How.) 504, 579, 12 L.Ed. 256 (1847), the Supreme Court recognized broad authority in state governments over trade in alcoholic beverages within their borders, noting that insofar as alcoholic beverages were concerned, states were free from the implied restrictions of the Commerce Clause. U.S.Const. art. I, § 8, cl. 3. After *Leisy v. Hardin* undercut that power, 135 U.S. 100, 10 S.Ct. 681, 34 L.Ed. 128 (1890), Congress passed the Wilson Act[3] and the Webb-Kenyon Act,[4] exercising its Com-

---

hold that the sales price to retail vendors must bear a relationship to the "laid-in cost."

**3.** 26 Stat. 313 (1890), 27 U.S.C. § 121 (1976). The Wilson Act attempted to give the states the power to regulate liquor shipped into the state to the same degree that the states could regulate liquor produced in the state. The Wilson Act was given a narrow construction by the Supreme Court. In *Rhodes v. Iowa,* 170 U.S. 412, 18 S.Ct. 664, 42 L.Ed. 1088 (1898), the Court held that the "interstate character" of

liquor remained until it was delivered to the consignee, and until it lost that interstate character, it was beyond the scope of state regulation. Thus, so long as liquor was in the process of transportation, the power to regulate remained *exclusively* with the federal government.

**4.** 37 Stat. 699 (1913), 27 U.S.C. § 122 (1976). The Act prohibited shipment of liquor into a state in violation of that state's laws, and sought to divest intoxicating liquors of their

merce Clause powers in an attempt to reinvigorate the state's role in alcoholic regulation. Passage of the Eighteenth Amendment temporarily ended "the uneasy tension between the Commerce Clause and state police power . . . ." *Craig v. Boren,* 429 U.S. 190, 205, 97 S.Ct. 451, 461, 50 L.Ed.2d 397 (1976).

In 1933, this "noble experiment" was ended with the ratification of the Twenty-first Amendment. Had the Twenty-first Amendment merely contained its first clause,[5] the control of liquor would have reverted to the pre-Eighteenth Amendment status. But the Twenty-first Amendment did more. Section 2 constitutionalized an exception to the normal operation of the Commerce Clause. *Craig v. Boren,* 429 U.S. 190, 206, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). That section is unique in the constitutional scheme in that it represents the only express grant of power to the states, thereby creating a fundamental restructuring of the constitutional scheme as it relates to one product—intoxicating liquors. *See California v. LaRue,* 409 U.S. 109, 115, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972).

There can be no doubt that this was the desire of those who framed the Twenty-first Amendment. As originally proposed, the Amendment contained three substantive sections, the third of which provided:

Congress shall have concurrent power to regulate or prohibit the sale of intoxicating liquors to be drunk on the premises where sold.

76 Cong.Rec. 4138 (1933). Section Three was deleted because of Congressional concern that its grant of concurrent power to regulate liquor to Congress would be construed to support the supremacy of federal regulation of liquor sales. As Senator Wagner pointed out, "We have expelled the system of national control through the front door . . . and readmitted it forthwith through the back door of Section 3." 76 Cong.Rec. 4145 (1933). This would have been the "ironical result of an amendment designed to restore to the states control of their liquor problem." *Id.* With these concerns in mind, Section Three was deleted in the final version of the amendment.

■ Thus, any analysis of the validity of a state statute regulating liquor does not proceed via the traditional route for testing the constitutionality of state statutes. We must proceed from a vantage point of presumed state power and then ask whether there are any limitations to that power, always keeping in mind that where intoxicating liquors are concerned, great deference must be accorded a comprehensive state regulatory scheme.

This unique constitutional structure has created problems for the courts, giving rise to seemingly conflicting analyses. The frontiers of this state power are unclear. While the Supreme Court has stated that "a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders," *Hostetter v. Idlewild Liquor Corp.,* 377 U.S. 324, 330, 84 S.Ct. 1293, 1297, 12 L.Ed.2d 350 (1964), it has also indicated that the "second section of the Twenty-first Amendment has not operated totally to repeal the Commerce Clause in the area of the regulation of traffic in liquor." *Seagram & Sons, Inc. v. Hostetter,* 384 U.S. 35, 42, 86 S.Ct. 1254, 1259, 16 L.Ed.2d 336 (1966). And so, while the Twenty-first Amendment "has not given the states plenary and exclusive power to regulate the conduct of persons doing an interstate liquor business outside their boundaries," *United States v. Frankfort Distilleries,* 324 U.S. 293, 299, 65 S.Ct. 661,

---

interstate character in certain situations. The Act was upheld as a legitimate exercise of the Commerce power in *Clark Distilling Co. v. Western Maryland Ry. Co.,* 242 U.S. 311, 37 S.Ct. 180, 61 L.Ed. 326 (1917).

5. "The eighteenth article of amendment to the Constitution of the United States is hereby repealed." U.S.Const. amend. XXI, § 1.

89 L.Ed. 951 (1945), the Twenty-first Amendment "demands wide latitude for regulation by the State" where liquor destined for use, distribution, or consumption is entirely within the state. *Seagram & Sons, Inc. v. Hostetter,* 384 U.S. 35, 42, 86 S.Ct. 1254, 1259, 46 L.Ed.2d 336 (1966).

■ In the instant case, the Florida Statute concerns only liquor sold to Florida retailers. Florida retailers may not purchase directly from the manufacturer but rather, must purchase from a wholesaler located within the state. Fla.Stat. § 561.-14(3). In other words, the Florida provision touches and concerns only wholesalers and retailers within the state of Florida. There can be no doubt that this is a valid exercise of Florida's police power, as recognized by the Twenty-first Amendment. *See Seagram & Sons, Inc. v. Hostetter,* 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966) (New York liquor pricing regulation requiring reference to wholesaler prices throughout the nation poses no Commerce Clause problem).

And yet, the government argues that the Federal Alcoholic Administration Act, 27 U.S.C. § 201 et seq., pursuant to which the federal regulations here challenged were promulgated, must prevail due to the Supremacy Clause of the Constitution. U.S. Const. art. VI, § 2. We cannot agree.

■■ Federal laws have prevailed over state regulation of intoxicating liquors in only two circumstances: 1) where the state regulation was repugnant to overriding national concern with due process[6] and equal protection,[7] and 2) where the state has sought to invade an area of exclusive federal concern, such as federally owned installations,[8] regulation of commerce with foreign nations,[9] and taxation of imports from foreign countries.[10] Thus, absent a strong federal interest, the state scheme must prevail. No interest of sufficient magnitude is advanced in support of ATF Ruling 74–6. Accordingly, we hold that insofar as ATF Ruling 74–6 and Florida Statute § 561.42(6) conflict, the Florida Statute must prevail. Accordingly, we reverse the holding of the district court and remand this action so that the district court may enter its order in accordance with this opinion.

REVERSED AND REMANDED.

---

6. *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1970); *Hornsby v. Allen,* 326 F.2d 605 (5th Cir. 1964).

7. *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 178–179, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

8. *Collins v. Yosemite Park & Curry Co.,* 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502 (1938). *See* U.S.Const. art. I, § 8, cl. 17.

9. *Hostetter v. Idlewild Bon Voyage Liquor Corp.,* 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964). *See* U.S.Const. art. I, § 8, cl. 3.

10. *Department of Revenue v. James B. Beam Distilling Co.,* 377 U.S. 341, 84 S.Ct. 78, 11 L.Ed.2d 48 (1964). *See* U.S.Const. art. I, § 19, cl. 2.