**WINE INDUSTRY OF FLORIDA, INC., et al., Plaintiffs-Appellants,**

v.

**G. William MILLER, Secretary, United States Department of the Treasury, et al., Defendants-Appellees.**

No. 79-1742.

United States Court of Appeals, Fifth Circuit.

Jan. 15, 1980.

Wilbur E. Brewton, J. Riley Davis, Tallahassee, Fla., for plaintiffs-appellants.

J. Worth Owen, Asst. U. S. Atty., Tallahassee, Fla., Arnold Yorra, Attorney for Alcohol, Tobacco & Firearms, Atlanta, Ga., for defendants-appellees.

Before THORNBERRY, CHARLES CLARK and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge.

This case involves the Twenty-first Amendment,[1] 27 U.S.C. § 205(b)(3),[2] Alcohol, Tobacco and Firearm (ATF) Rule 77–4,[3] and Fla.Stat.Ann. § 561.424,[4] or, more par-

---

1. Section two of the 21st Amendment provides: The transportation or importation into any State, Territory or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the law thereof, is hereby prohibited.

2. 27 U.S.C. § 205 provides in part: It shall be unlawful for any [producer, importer or wholesaler] of distilled spirits . . .

(b) To induce through any of the following means, any retailer, engaged in the sale of [alcoholic beverages], to purchase any such products from such person to the exclusion in whole or in part of [alcoholic beverages] sold or offered for sale by other persons in interstate or foreign commerce, if such inducement is made in the course of interstate or foreign commerce, or if such person engages in [such practices], to such an extent as substantially to restrain or prevent transactions in interstate or foreign commerce in any such products, or if the direct effect of such inducement is to prevent, deter, hinder, or restrict other persons from selling or offering for sale any such products to such retailer . . .

(3) by furnishing, giving [or otherwise providing] to the retailer any . . . services, or other thing of value, subject to such exceptions as the Secretary of the Treasury shall by regulation prescribe, having due regard for public health, the quantity and value of articles involved, established trade customs not contrary to the public interests and the purposes of this subsection.

3. ATF 77–4 provides:
[A] wine supplier may, for the purpose of maintaining the freshness of his product:
1. Rearrange his own wine already stocked on shelves, in coolers, in cold boxes, and on floor displays by placing the oldest wine in front.
2. Rearrange and add to his own wine in the storage area assigned to him by the retailer. However, the wine supplier may not:

1. Add wine to shelves, coolers, cold boxes and the like.
2. Transfer wine from one shelf, cooler, cold box, floor display or storage area to another shelf, cooler, cold box, floor display, or storage area.
3. Alter or disturb in any way the wine sold by another wholesaler.
4. Mark or fix retail prices.
Suppliers who rotate wine under conditions other than those identified above as permissible are cautioned that such "rotation" will be viewed as the providing of a service to the retailer. If such service (inducement) results in exclusion in whole or in part of a competitor's products sold or offered for sale in interstate or foreign commerce, a violation of the Federal Alcohol Administration Act would ensue.

4. Fla.Stat.Ann. § 561.424 provides:
(1) It is the finding of the Legislature that the in-store servicing of wine by a distributor is a necessary part of a distributor's function and responsibility to a vendor. It is further the finding of the Legislature that the in-store servicing of wine by a distributor is not intended by the distributor to induce a vendor to purchase wine from the distributor nor does the distributor intend to provide any financial assistance to a vendor by providing such in-store servicing to the vendor. In addition, it is the finding of the Legislature that in-store servicing of wine by a distributor is a normal trade or business practice which has substantially contributed to the increase in sales of wine resulting in a substantial benefit to the state by increased tax revenues resulting from the increased sales, and therefore is not a rendering of financial assistance to a vendor or an inducement to purchase wine.
(2) Nothing in s. 561.42 or any other provision of the alcoholic beverage law shall prohibit a distributor of wine from providing in-store servicing of wine sold by such distributor to a vendor. "In-store servicing" as

ticularly, the relationship between those provisions. Wine Industry of Florida, Inc. (WIF) contends that because of the Florida statute and section two of the Twenty-first Amendment, ATF Rule 77–4 is unconstitutional. Agreeing with the Treasury Department, the District Court for the Northern District of Florida held that because Fla.Stat.Ann. § 561.424 and ATF Rule 77–4 do not necessarily conflict, the ATF Rule is constitutional. WIF appeals. For the reasons stated below, we reverse.

Over forty years ago, in an effort to diminish unfair competition in the alcoholic beverages field, the Congress of the United States passed a "tied-house evil" law. 27 U.S.C. § 205(b). This law prohibits any wholesaler of alcoholic beverages from providing to the retailer services which have the effect of inducing retailers to deal with them to the exclusion of other wholesalers. The law, however, authorizes the Secretary to promulgate regulations exempting certain services from the prohibition.

Pursuant to that provision, the Bureau of Alcohol, Tobacco and Firearms (BATF), issued ATF Rule 73–7 which permitted a wine distributor to service the retailer by rotating his wine on the retail premises. There was a caveat to ATF Rule 73–7: the distributors could not engage in "servicing"[5] if the servicing had the effect of inducing a retailer to deal with that distrib-

utor to the exclusion of another, or if it had an anti-competitive effect.

The Regional Director of BATF who has jurisdiction over Florida interpreted "rotation" in ATF Rule 73–7 to permit a distributor to move wine both on the shelves and from the cold storage area to the shelves. The Regional Director for the Southwest Region interpreted "rotation" in the same ruling to permit rotation only on the shelf, not between cold storage and the shelves.

In 1976, the various Regional Directors requested the Director of BATF to clarify the term "rotation." His proposed ruling indicated a distributor would be permitted only to rotate wine already on a shelf, and would not be permitted to move wine from cold storage to the shelf. The ruling also provided that distributors would not be permitted to mark prices on the wine or to stock the shelves.[6] After considering the Regional Director's suggestions on the proposed ruling,[7] BATF issued ATF Rule 77–4.[8]

In an obvious response to ATF Rule 77–4, the Florida legislature enacted Fla.Stat. Ann. § 561.424.[9] The statute includes a legislative finding that servicing by a distributor is not intended to induce a retailer to deal with a certain distributor, and that servicing is a normal trade practice which benefits the state through increased tax revenues. In short, the statute provides that even extensive servicing[10] by a distrib-

---

used herein means: placing the wine on the vendor's shelves and maintaining the appearance and display of said wine on the vendor's shelves in the vendor's licensed premises; placing the wine not so shelved or displayed in a storage area designated by the vendor, which is located in the vendor's licensed premises; rotation of vinous beverages; and price stamping of vinous beverages in vendor's licensed premises. This section shall not apply to distilled spirits.

5. "Servicing" includes any service a distributor might provide to a retailer, including stocking the shelves, rotating the wine so the oldest bottles are sold first, and marking the price of the wine on the bottle after the price has been determined by the retailer.

6. Price marking and shelf stocking had always been considered prohibited servicing under 27 U.S.C. § 205(b)(3).

7. All the Regional Directors except the one with jurisdiction over Florida approved the proposed ruling. The lone dissent indicated:

We find the draft to be inconsistent with our regional memorandum 74–3 in that the restrictions imposed by the definition of rotation are too severe. It would seem that the primary intent of allowing rotation is to insure that the consumer does not purchase spoiled wine. In order to be effective, rotation must be defined in such a manner as to include all wine on the retailer's premises.

8. For the text of this ruling, see note 3, *supra.*

9. For the text of this statute, see note 4, *supra.*

10. The statute defines "in-store servicing" broadly to include stocking the retailers' shelves, rotating the wine on the shelf and between cold storage and the shelf, and price stamping the wine.

utor is neither financial assistance to the retailer nor an inducement to purchase from the distributor.

■ After the Regional Director of BATF indicated that the Florida legislation would have no effect on federal law, and that WIF's petition for an exemption for shelf-stocking would take approximately a year to be ruled on, WIF brought suit for declaratory and injunctive relief. The suit requested a declaration that ATF Rule 77–4 is arbitrary and capricious because it is inconsistent with the intent of Congress and is an abuse of discretion, and that it is unconstitutional under the Twenty-first Amendment. We hold that under the ruling of this court in *Castlewood International Corp. v. Simon*, 596 F.2d 638 (5th Cir. 1979), ATF Rule 77–4 must be declared unconstitutional.[11]

■ Section two of the Twenty-first Amendment is hardly an often-litigated provision of the Constitution. There is, however, a small body of case law which has evolved around it. Typically, litigated cases under the Twenty-first Amendment involve state laws which are more restrictive than federal law. Indeed, the purpose of the Amendment was to permit "dry" states to regulate, to the point of exclusion, the flow of alcohol across their borders. 76 Cong.Rec. 4141 (remarks of Sen. Blaine). *See also California v. LaRue*, 409 U.S. 109, 134, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) (Marshall, J., dissenting). *See, e. g., Joseph E. Seagram & Sons v. Hostetter*, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966); *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964). Accordingly, the Twenty-first Amendment protects a state which chooses to impose a burden on the sale of

alcohol which would be impermissible under the Commerce Clause if the item burdened was not alcohol. *Joseph E. Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966); *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964); *Indianapolis Brewing Co. v. Liquor Control Comm'n*, 305 U.S. 391, 59 S.Ct. 254, 83 L.Ed. 243 (1939); *Joseph S. Finch & Co. v. McKittrick*, 305 U.S. 395, 59 S.Ct. 256, 83 L.Ed. 246 (1939); *Ziffrin, Inc. v. Reeves*, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128 (1939); *Mahoney v. Joseph Triner Corp.*, 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424 (1938); *State Board v. Young's Market Co.*, 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38 (1936). *But see Department of Revenue v. James B. Beam Distilling Co.*, 377 U.S. 341, 84 S.Ct. 1247, 12 L.Ed.2d 362 (1964). (Twenty-first Amendment does not permit a state to impose a tariff on alcohol in violation of the Export-Import clause of the Constitution.)

This case presents what is essentially the inverse of the typical Twenty-first Amendment case; here the Federal government has placed a burden on commerce in alcohol which the state wishes to avoid. Analogous challenges were made to application of the Emergency Price Control Act of 1942 to the sale of liquor. In those cases, however, the contention was made that the Federal government is completely prohibited from legislating in the area of alcoholic beverages by the Twenty-first Amendment. Such challenges failed, but there did not appear to be any countervailing state legislation involved. *Old Monastery Co. v. United States*, 147 F.2d 905 (4th Cir.), *cert. denied*, 326 U.S. 734, 66 S.Ct. 44, 90 L.Ed. 437 (1945); *Jatros v. Bowles*, 143 F.2d 453 (6th Cir. 1944).

---

11. WIF's argument that the rule is arbitrary and capricious may disposed of summarily. It argues that the rule is arbitrary because it prohibits servicing which the Florida distributors have been providing for 15 years, namely rotation of wine between cold storage and shelves and pricing. WIF's argument largely ignores the fact that ATF Rule 77–4 provides that servicing which is prohibited by the Rule only constitutes a violation of the Federal Alcohol Administration Act if it "results in exclu-

sion in whole or in part of a competitor's products sold or offered for sale in interstate or foreign commerce." If, in fact, in-store servicing is as common as WIF argues it is, then those actions do not have an anti-competitive effect and there has been no violation. We cannot say, however, that BATF was acting arbitrarily or capriciously in deciding that there is a high enough probability that in-store servicing would have an anti-competitive effect that it should be prohibited.

In *Washington Brewers Institute v. United States*, 137 F.2d 964 (9th Cir.), *cert. denied*, 320 U.S. 776, 64 S.Ct. 89, 88 L.Ed. 465 (1943), the court was faced with a situation more closely analogous to that in the instant case. Washington Brewers Institute was prosecuted for violating the Sherman Act. Its defense was two-pronged: (1) the Twenty-first Amendment removes from the Federal government all jurisdiction to govern commerce in alcoholic beverages; and (2) even if all jurisdiction is not removed, to the extent the state has occupied the field with legislative action, the Federal government is without authority to legislate. The first contention was resoundingly resolved against the defendant by *William Jameson & Co. v. Morgenthau*, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189 (1939). The second contention, according to the Ninth Circuit, has some merit. It held that to the extent federal legislation is *inconsistent* with state liquor control legislation, under the Twenty-first Amendment the federal legislation must give way to the state legislation. The court cautioned, however, that we should be slow to assume the state has sanctioned conduct prohibited under federal law. Apparently, if the conspiracy to fix prices had been affirmatively protected by state law, it would have been beyond the reach of the Sherman Act.[12]

The Ninth Circuit appeared to define "conflict" under the Twenty-first Amendment as existing when one law sanctions an action which is prohibited under the other law. A more conservative definition was used by the Supreme Court in *Joseph E. Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966). At issue in *Seagram & Sons* was a state law which required liquor importers to sell liquor to New York wholesalers and retailers at no higher price than the lowest price of their sales outside of New York the preceding month. Distillers, wholesalers and importers challenged the legislation, arguing that it conflicted with the Sherman Act and the Robinson-Patman Act, and therefore was invalid under the Supremacy Clause. The Court rejected the argument stating:

> Section 9 [the state law at issue] imposes no irresistible economic pressure on the appellants to violate the Sherman Act in order to comply with the requirements of § 9. On the contrary, § 9 appears firmly anchored to the assumption that the Sherman Act will deter any attempts by the appellants to preserve their New York price level by conspiring to raise the prices at which liquor is sold elsewhere in the country. Nothing in the Twenty-first Amendment, of course, would prevent enforcement of the Sherman Act against such a conspiracy. *United States v. Frankfort Distilleries*, 324 U.S. 293, 299 [, 65 S.Ct. 661, 89 L.Ed. 951].

> Although it is possible to envision circumstances under which price discriminations proscribed by the Robinson-Patman Act might be compelled by § 9, the existence of such potential conflicts is entirely too speculative in the present posture of this case to support the conclusion that New York is foreclosed from regulating liquor prices in the manner it has chosen.

384 U.S. at 45–46, 86 S.Ct. at 1261. The Supreme Court, therefore, apparently sees a "conflict" only to exist when one law affirmatively requires one to violate the other law.[13]

---

**12.** *See also United States v. Frankfort Distilleries, Inc.*, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951 (1945) where the Court was faced with a 21st Amendment challenge to the Sherman Act.

The Sherman Act is not being enforced in this case in such manner as to conflict with the law of Colorado. Those combinations which the Sherman Act makes illegal as to producers, wholesalers and retailers are expressly exempted from the scope of the Fair Trade Act of Colorado, and thus have no legal sanction under state law either. We therefore do not have here a case in which the Sherman Act is applied to defeat the policy of the state. That would raise questions of moment which need not be decided until they are presented.

324 U.S. at 299, 65 S.Ct. at 664 (footnote omitted).

**13.** It is true that unlike the instant case where a federal law is being challenged, *Seagram & Sons* involved a challenge to a state law. The precedential value of the decision on the definition of "conflict" should not, however, be re-

It is clear beyond argument that Fla.Stat. Ann. § 561.424 is permissive and not directive. Therefore, as in *Seagram & Sons*, state law does not *require* the distributors to engage in conduct prohibited under federal law. Furthermore, under ATF Rule 77–4 the distributors can engage in the servicing permitted under Fla.Stat.Ann. § 561.424 if it has no anticompetitive effect. Hence, compliance may be had with both laws.

A similar interplay existed between the Florida statute and the ATF Rule at issue in *Castlewood International Corp. v. Simon*, 596 F.2d 638 (5th Cir. 1979). ATF Rule 74–6 provided that unless "a wholesaler could specifically justify otherwise, any price charged a retail vendor which was less than a wholesaler's 'laid-in cost plus total operating cost' would be considered a violation of the Tied House Evil Law [27 U.S.C. § 205(b)]." 596 F.2d at 640. A Florida statute, however, permits trade discounts to be given in the ordinary course of business provided that: (1) the discount is given simultaneously with the sale, and (2) the distributor offers the same discount to all vendors buying similar quantities of liquor. Fla.Stat.Ann. § 561.01(10).

The Fifth Circuit certified to the Florida Supreme Court the question of whether the Florida law permits wholesalers to sell to retailers below the laid-in cost—that is, does Florida law permit that which federal law prohibits. In response to the question, the Florida Supreme Court held that the Florida law does permit a sale below laid-in cost as long as the discount is given at the time of the sale and is available to all retailers purchasing similar quantities. *Castlewood International Corp. v. Simon*, 367 So.2d 613 (Fla.1979).

The Fifth Circuit adopted a definition of "conflict" analogous to that used by the Ninth Circuit in *Washington Brewers Institute v. United States*, 137 F.2d 964 (9th Cir.), *cert. denied*, 320 U.S. 776, 64 S.Ct. 89, 88 L.Ed. 465 (1943), by stating: "[I]t is apparent that the two regulatory schemes

are in conflict as the federal policy creates a floor on wholesale prices below which prices, acceptable under the Florida scheme, may not go." 596 F.2d at 641. The panel then held that there is no federal interest of sufficient magnitude to uphold the ATF Rule, in light of its "conflict" with state law.

Here, as in *Castlewood*, federal law prohibits conduct permissible under state law, namely in-store servicing which has an anticompetitive effect. The federal interests in ATF Rule 77–4 are the same as were present in *Castlewood*. Accordingly, being bound by *Castlewood*, we reverse and remand for the district court to enter an order in accordance with this opinion.

REVERSED AND REMANDED.

jected on such a tenuous distinction since whose ox is being gored by the legislation is generally the determinant of which law is being challenged.