# Proposed Legislation to Restrict the Sales of Alcoholic Beverages in Interstate Commerce

Proposed legislation to prohibit the sale in interstate commerce of alcohol to persons under the age of 21 is a valid exercise of Congress' power under the Commerce Clause and consistent with the Twenty-First Amendment. The Twenty-First Amendment permits states to enact legislation more restrictive than would otherwise be permissible under the Commerce Clause; however, it does not deprive the federal government of any authority over alcohol under the Commerce Clause.

The proposed legislation would not be "in violation" of more permissive state laws. Even if it were read to be "in violation" of such laws, a court would likely find that the federal interest in preventing damage to national commerce outweighed any particular state's interest in permitting access to liquor for persons under age 21.

April 16, 1984

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL,
OFFICE OF LEGISLATIVE AFFAIRS

This responds to your request of January 20, 1984 for our views on H.R. 3870, a bill to restrict the sales of alcoholic beverages in interstate commerce. Although Congress has not yet asked for the Department's views on this bill, you have requested our opinion in view of the questions raised by opponents of the bill and the public debate over it.[1] We have reviewed H.R. 3870 and believe that it is constitutional.

Section 1 of the bill contains congressional findings on the economic damage done by drunk drivers, the disproportionate number of accidents caused by drunk drivers who are under the age of 21, and the benefits to the public welfare that will result from restricting sales of alcohol to those over 21. Section 2 prohibits the sale in interstate commerce of alcohol to those under 21:

> No person may sell or offer to sell any alcoholic beverage to any individual who is under the age of twenty-one if the beverage is or has traveled in interstate commerce or if the sale or offer to sell is made in an establishment which is in or affects interstate commerce.

---

[1] *See* Wash. Post, Feb. 9, 1984, at A12, col. 6; 70 A.B.A. J.18 (Apr. 1984). The Office of Management and Budget has recently asked for our views on this bill.

Section 3 provides definitions; § 4, penalties; and § 5 authorizes civil actions by citizens against those who violate § 2.[2] Section 6 permits the Secretary of Commerce to waive the application of § 2 in any state that has a law "effective in prohibiting the sale of liquor" to those under 21, and to cancel the waiver if the law is ineffective. Section 7 makes § 2 effective two years after passage of H.R. 3870.

The constitutional question raised by H.R. 3870 is whether § 2 of the Twenty-First Amendment to the Constitution prohibits the federal government from exercising authority under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, that would otherwise clearly furnish a constitutional basis for enacting this legislation.[3] Although the issue is not, because of its novelty, entirely free from doubt, we believe that the proposed legislation is constitutionally permissible.

## Analysis

The Twenty-First Amendment to the Constitution repealed the Eighteenth Amendment and the imposition of nationwide prohibition. U.S. Const. amend. XXI. Section 2 of the Amendment provides: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." The effect of § 2 is to permit states to enact legislation more restrictive than would otherwise be permissible under the Commerce Clause. *See United States* v. *Frankfort Distilleries, Inc.*, 324 U.S. 293, 300 (1945) (Frankfurter, J., concurring); 76 Cong. Rec. 4141, 4143 (1933) (statement of Sen. Blaine). That is to say, the Twenty-First Amendment permits states to go beyond non-discriminatory regulation based on their police powers[4] and enact discriminatory regulation.[5] However, early arguments that § 2 entirely de-

---

[2] As reported out by the Committee on Energy and Commerce of the House of Representatives, § 5 of H.R. 3870 would permit any one to file civil suits to enjoin violations of § 2. The suits could be brought only in state court.

[3] Given the phraseology of § 2 of H.R. 3870, we have analyzed this bill under the Commerce Clause. We do not address the federal government's power over alcohol arising under other portions of the Constitution, such as the Export-Import Clause, *see Department of Revenue* v. *James Beam Corp.*, 377 U.S. 341 (1964), or the Fourteenth Amendment's requirement of equal protection, *see Craig* v. *Boren*, 429 U S. 190 (1976).

[4] For example, prior to passage of the Eighteenth Amendment, the Supreme Court rebuffed Commerce Clause challenges to several state statutes prohibiting entirely the sale or manufacture of alcohol. The Court held that the laws were valid exercises of the states' police power over local commerce even though their effects "may reach beyond the State by lessening the amount of intoxicating liquors exported." *Kidd* v. *Pearson*, 128 U.S. 1, 22 (1888). *See also Foster* v. *Kansas*, 112 U.S. 201, 206 (1884); *Bartemeyer* v. *Iowa*, 85 U.S. 129, 133 (1873); *The License Cases*, 46 U.S. (5 How.) 504, 576–77 (1847) (Taney, C.J.).

[5] Thus, state statutes that regulate the entry of alcohol in order to protect a state liquor monopoly, *State Board* v. *Young's Market Co.*, 299 U.S. 59 (1936), or to retaliate against other states' discriminatory laws, *Indianapolis Brewing Co.* v. *Liquor Control Comm'n*, 305 U.S. 391 (1939), have been upheld even though such legislation "would obviously have been unconstitutional" in the absence of the Twenty-First Amendment. *State Board* v. *Young's Market Co.*, 299 U.S. at 62. Prior to passage of the Eighteenth Amendment, similar discriminatory statutes barring the entry of alcohol into a state except under the auspices of the state liquor monopoly were struck down as an impermissible burden on interstate commerce. *See, e.g., Vance* v. *W.A. Vandercook Co.* (No. 1), 170 U.S. 438 (1898); *Scott* v. *Donald,* 165 U.S. 58 (1897). The legislative history of § 2 indicates that it was passed, at least in part, to assure the "dry" states that they would be able to defend themselves against shipments of alcohol into their states. 76 Cong. Rec. 4141 (1933).

prived the federal government of any authority under the Commerce Clause over alcohol were quickly rejected. *United States* v. *Frankfort Distilleries, Inc.,* 324 U.S. 293, 299 (1945); *Jameson & Co.* v. *Morgenthau,* 307 U.S. 171, 172–73 (1939).[6]

We believe that H.R. 3870 is constitutional for three reasons. First, we do not believe that H.R. 3870 violates the literal language of § 2 of the Twenty-First Amendment. Forbidding the sale of alcohol to those under 21 in a state that permits sales to those over, for example, the age of 18 is not "in violation of the laws" of the state. *Id.* It may replace a permissive state policy with a more restrictive federal statute, but it does so without literally violating a state statute.[7] Thus, the ban on sale of alcohol to those under 21 raises questions under the Twenty-First Amendment only because some have assumed that broad federal deference to state action in this area is a matter of constitutional law rather than policy. Second, even assuming that H.R. 3870 were read to be "in violation" of a more permissive state law because the bill conflicts with the policy expressed by the state law, we believe that it would, under the balancing test articulated in the Supreme Court's most recently decided case in this area, *California Retail Liquor Dealers Ass'n* v. *Midcal Aluminum, Inc.,* 445 U.S. 97, 108 (1980) (*Midcal*), pass constitutional muster because the federal interests would outweigh any particular state's interest.

*Midcal* involved a Sherman Act challenge to a California law governing wine pricing. In resolving whether the Sherman Act applied, the Supreme Court addressed the issue whether § 2 of the Twenty-First Amendment permitted California to countermand the congressional policy in favor of competition. The Court emphasized that § 2 and the Commerce Clause must be viewed as part of a whole. "'Like other provisions of the Constitution, each must be considered in light of the other, and in the context of the issues and interests at stake in any concrete case.'" *Id.* at 109 (quoting *Hostetter* v. *Idlewild Liquor Corp.,* 377 U.S. 324, 331–32 (1964)). The focus of the analysis should be a "pragmatic effort to harmonize state and federal powers" that gives proper respect to both Clauses:

---

[6] In *Jameson & Co.* v. *Morgenthau,* the Court said:

> [T]he Federal Alcohol Administration Act was attacked upon the ground that the Twenty-First · Amendment to the Federal Constitution gives to the States complete and exclusive control over commerce in intoxicating liquors, unlimited by the commerce clause, and hence that Congress has no longer authority to control the importation of these commodities into the United States. We *see* no substance in this contention.

307 U.S. at 172–73; *see also Hanf* v. *United States,* 235 F.2d 710 (8th Cir.), *cert. denied,* 352 U.S. 880 (1956); *Old Monastery Co.* v. *United States,* 147 F 2d 905 (4th Cir.), *cert. denied,* 326 U.S. 734 (1945); *Jatros* v. *Bowles,* 143 F.2d 453 (6th Cir. 1944); *Arrow Distilleries, Inc.* v. *Alexander,* 109 F.2d 397 (7th Cir), *cert. denied,* 310 U.S. 646 (1940)

[7] Therefore, in states that do not forbid drinking under the age of 18, H R. 3870's passage will not oust a more permissive state statute. The Fifth Circuit has read the Twenty-First Amendment as providing authority for permissive state alcohol laws to override more restrictive federal regulations, notwithstanding the Supremacy Clause. *Cf. Castlewood Int'l Corp.* v. *Simon,* 596 F.2d 638 (5th Cir. 1979), *vacated,* 446 U.S. 949 (1980), *opinion reinstated on remand,* 626 F.2d 1200 (5th Cir. 1980) (Florida law permitting sales at unlimited discount to retailers prevailed over Department of the Treasury regulation forbidding same; Florida's interest in regulating intrastate retailers greater than federal interest in uniform national regulations). *See also Wine Indus.* v. *Miller,* 609 F.2d 1167 (5th Cir. 1980); *Washington Brewers Inst.* v. *United States,* 137 F.2d 964 (9th Cir.), *cert. denied,* 320 U.S. 776 (1943).

> [T]here is no bright line between federal and state powers over liquor. The Twenty-First Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system. Although States retain substantial discretion to establish other liquor regulations, those controls may be subject to the federal commerce power in appropriate situations. The competing state and federal interests can be reconciled only after careful scrutiny of those concerns in a "concrete case."

*Midcal,* 445 U.S. at 110.[8]

The analysis of H.R. 3870 must begin, therefore, with an identification of the state and federal interests involved. States that already prohibit drinking by those under 21 have interests that coincide, at least presently, with the federal interests detailed in § 1 of H.R. 3870. The practical effect of the proposed bill would be to assist those states in enforcing their own laws by reducing the availability of alcohol in neighboring states that have more permissive laws.

On the other hand, states that have drinking ages lower than 21 have presumably made a legislative determination that drinking by those over, for example, the age of 18 is permissible. The interests of these states may be described as protecting their separate decisions to permit access to liquor to those over 18.[9]

The federal government's interest is, we assume, the economic injuries and resultant allocation of resources flowing in interstate commerce caused by

---

[8] In *Midcal,* the Court identified the federal interest as the "familiar and substantial" one of a national policy favoring competition. 445 U.S. at 110. The state's interest in the resale price maintenance statute had been identified by the California Supreme Court as twofold: promotion of temperance and orderly market conditions. *Id.* at 112. That same court had then found, however, that there was in fact little correlation between the statute and either temperance or orderly market conditions. The United States Supreme Court stated, in concluding that the federal interests outweighed state concerns, "[w]e have no basis for disagreeing with the view of the California courts that the asserted state interests are less substantial than the national policy in favor of competition." *Id.* at 113.

[9] There may also be states, particularly those with a monopoly on liquor sales, that have an economic interest in promoting sales to those over 18. To the extent that states advance an economic interest, however, it seems reasonable to assume that the federal government can demonstrate that its economic interest in property and people probably outweighs whatever the particular state's individual interest is in revenue from potential sales. We do not believe that the exercise of Congress' authority in this fashion under the Commerce Clause would be held to violate any state interest protected by the Tenth Amendment. The sale of alcohol by a state monopoly is not one of the "integral government functions," *National League of Cities* v. *Usery,* 426 U.S. 833, 855 (1976), protected by that Amendment from federal interference. *See Ohio* v. *Helvering,* 292 U.S. 360, 368–69 (1934); *South Carolina* v. *United States,* 199 U.S. 437, 463 (1905). Both *Ohio* and *South Carolina* involved state challenges to federal taxes on the state liquor monopoly. The *South Carolina* Court held that the sale of liquor by a state monopoly "is of a private nature" and not a governmental function whose taxation would "impede or embarrass a State in the discharge of its functions." 199 U.S. at 463. This ruling was reaffirmed in the *Ohio* case notwithstanding passage of the Twenty-First Amendment:

> A distinction is sought in the fact that after that case was decided the Eighteenth Amendment was passed, and thereby, it is contended, the traffic in intoxicating liquors ceased to be private business, and then with the repeal of the amendment assumed a status which enables a state to carry it on under the police power. The point seems to us altogether fanciful. The Eighteenth Amendment outlawed the traffic; but, certainly, it did not have the effect of converting what had always been a private activity into a governmental function.

*Ohio* v. *Helvering,* 292 U.S. at 369.

drunk drivers under the age of 21. H.R. 3870, § 1. The loss of life, the crippling of individuals, the loss to production because of time lost from work, and the property damage caused by accidents involving such drunk drivers will, we assume, be detailed in H.R. 3870's legislative history.[10] Using *Midcal*'s balancing test, we believe that a court could find, assuming a sufficient legislative history, that the federal government's interest in preventing damage to national commerce outweighed any particular state's interest in permitting access to liquor for those under 21.

Finally and, we believe, importantly, given that § 2 of the Twenty-First Amendment was intended to assure that states would be able to enact restrictive legislation retaining prohibition on a local level, 76 Cong. Rec. 4140–41 (1933), it would be anomalous if states could use § 2 to insist on permissive state laws that could frustrate federal efforts directed towards a limited form of temperance.

## Conclusion

H.R. 3870 will not mandate importation of alcohol into any state in violation of its laws. Under the *Midcal* test, Congress could, we believe, articulate a federal interest that would outweigh a state's interest in providing its citizens under the age of 21 access to alcohol. We therefore believe that H.R. 3870 will survive constitutional attack.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[10] We assume that the statistical evidence will be more persuasive than that presented to the Supreme Court in *Craig* v. *Boren*, 429 U.S. 190 (1976), and rejected there as too tenuous. *See id.* at 200–04 (striking down state ban on sale of 3.2 percent beer to males between the ages of 18 and 21).