166 N.J. Super. 418 (1979)
400 A.2d 66
WESTERN ELECTRIC COMPANY, GARNISHEE-APPELLANT,
v.
EVELYN C. TRAPHAGEN, PLAINTIFF-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 9, 1979.
Decided February 27, 1979.
*420 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. Arnold S. Cohen argued the cause for appellant (Messrs. Pitney, Hardin & Kipp, attorneys; Mr. Clyde A. Szuch on the brief).
Mr. Stephen C. Carton argued the cause for respondent (Messrs. Carton, Nary, Witt & Arvanitis, attorneys).
The opinion of the court was delivered by MORGAN, J.A.D.
At issue on this appeal is whether an employee's interest in a private pension fund, designated an approved plan by the United States Department of Labor under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. § 1001 et seq., can be reached by garnishment to satisfy a former wife's judicially declared right to alimony. Subsumed thereunder are issues concerning the extent of federal preemption of state action affecting private pension plans covered by ERISA and the presence vel non of constitutionally interdicted conflict between ERISA's proscription against "assignment and alienation" of pension income, 29 U.S.C.A. § 1056(d), and state statutory authority permitting garnishment of a defaulting spouse's income to satisfy a claim for alimony. N.J.S.A. 2A:17-56.1.
*421 There being no dispute concerning the facts pertinent to these issues, the controversy herein can be disposed of as a matter of law. A judgment of divorce, entered on August 8, 1977 and filed August 26, 1977 in the Superior Court of New Jersey, ordered Kenneth E. Traphagen, a former employee of Western Electric Company (Western), to pay his former spouse, Evelyn C. Traphagen, $2,462.60 plus alimony of $335 a month. Not having received monies in compliance with this order, the wife sought to reach a portion of Traphagen's income interest in his pension from Western, and on November 7, 1977 a notice of motion for an order of execution for the payment of alimony was served on Western. Western, the garnishee, appeared in opposition and argued unsuccessfully against entry of the requested order, and again at a subsequent motion for reconsideration based upon promulgation of Treasury Regulation § 1.401(a)-13, 43 C.F.R. 6942-44 (1978). Western appeals from entry of the order of garnishment.
Western's pension plan, which provides Traphagen with a net monthly pension benefit of $851.34, is covered by the terms and conditions of ERISA. Pertinent to the issues raised herein, the plan contains a proscription against the assignment and alienation of pensions.[1] This proscription is mandated by 26 U.S.C.A. § 401(a) (13), and 29 U.S.C.A. § 1056(d) (1) of ERISA, provisions critical to a disposition of the issues raised herein. 29 U.S.C.A. § 1056(d), effective January 1, 1976, provides in relevant part:
(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.
(2) For the purposes of paragraph (1) of this subsection, there *422 shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment, or of any irrevocable assignment or alienation of benefits executed before September 2, 1974. The preceding sentence shall not apply to any assignment or alienation made for the purposes of defraying plan administration costs. * * *
A cognate amendment to the Internal Revenue Code of 1954 was made consistent with ERISA proscription against assignment or alienation. 26 U.S.C.A. § 401(a) (13) now provides:
A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated. For purposes of the preceding sentence, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment made by any participant who is receiving benefits under the plan unless the assignment or alienation is made for purposes of defraying plan administration costs. * * * This paragraph shall take effect on January 1, 1976 and shall not apply to assignments which were irrevocable on September 2, 1974.
Regulations, which were adopted by the Treasury Department and upon which Western relied in its reargument, interpret the statutory proscription against assignment or alienation to include involuntary transfers by "attachment, garnishment, levy, execution or other legal or equitable process." Treas. Reg. § 1.401(a)-13, 43 C.F.R. 6942-44 (1978).[2] *423 The foregoing statutory provisions and their administrative implementation constitute the essential predicate for Western's challenge to the constitutional validity of the garnishment order here under consideration.
Western's attack is two-fold. First, it contends that N.J.S.A. 2A:17-56.1, which expressly authorizes execution on pension benefits in satisfaction of orders for alimony, is, to the extent of its attempted application to pension benefits covered by ERISA, preempted by that federal enactment and that any action taken thereunder, such as the order challenged here, runs afoul of the Supremacy Clause of the United States Constitution.[3] Second, but related, Western contends that the order of garnishment and the statute authorizing it, being inconsistent with ERISA's proscription against "assignment or alienation" of pension benefits, is similarly subversive of the Supremacy Clause command.
Appellant's argument that N.J.S.A. 2A:17-56.1 is preempted by ERISA does not require the presence of an actual conflict between that enactment and any particular ERISA provision. All that is required is an express or clearly implied congressional intent that ERISA has so fully occupied the private pension field as to foreclose any *424 state action, consistent or not, in that area. See Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1940); Florida Avocado Growers v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248, 256-257 (1963). Western's argument concerning preemption would, therefore, be dispositive of this matter in the event the challenged state law is not in conflict with a federal enactment. Quite obviously, if such a conflict is found, the state law falls by that reason alone under the Supremacy Clause. Hence, as a proffered additional ground for appeal, preemption must be considered, and we undertake this phase on the assumption that N.J.S.A. 2A:17-56.1 does not conflict with the anti-assignment provisions of ERISA and the Internal Revenue Code. Whether such a conflict exists will be considered later in connection with Western's contention that it does.
Western's preemption argument is premised on 29 U.S.C.A. § 1144(a) which provides, in relevant part, that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered thereby. Concededly, federal legislation in a field may be so pervasive that it precludes any state regulation of the same field even though the challenged state enactment and the preemptive federal law are not directly in conflict. See Malone v. White Motor Corp., 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978); State v. Jersey Central Power & Light Co., 69 N.J. 102, 111-115 (1976). Western contends that ERISA constitutes that kind of legislation. We disagree.
In preemption matters the purpose of the allegedly preempting legislation is a vital consideration. Doubtless § 1144(a) was intended to insure ERISA's broad preemptive effect to secure uniformity in regulation of covered pension plans. State laws which relate to such benefit plans in the manner in which ERISA relates to them, or which burden such plans with additional regulation, must be regarded as falling within ERISA's preempting scope despite the absence of conflict with any of its provisions. Standard Oil of *425 California v. Agsalud, 442 F. Supp. 695, 706-707 (N.D. Cal. 1977). We do not, however, read § 1144(a) as evidencing a congressional intent to preempt every state law, or action thereunder, having even the most tangential effect on covered pension plans. Stone v. Stone, 450 F. Supp. 919, 932 (N.D. Cal. 1978), appeal filed No. 78-2813 (9 Cir. May 26, 1978); Time Ins. Co. v. Dept. of Industry, Labor & Human Relations, 46 U.S.L.W. 2369, 2370 (Wis. Cir. Ct. 1978). Before the Supremacy Clause will demand that state law relating to enforcement of family decrees be overridden, such law must do "major damage" to "clear and substantial" federal interests. Hisquierdo v. Hisquierdo, ___ U.S. ___, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979).
Hence, in considering the relationship between ERISA and N.J.S.A. 2A:17-56.1, which Western contends is preempted to the extent it authorizes garnishment of private pension funds, we observe that the state enactment does not purport to regulate pension funds or the way in which they are administered. Congressional objectives of uniformity in regulation are not therefore being subverted by its implementation. Nothing in the garnishment statute jeopardizes the continued solvency of such funds or impairs congressional interest in insuring their collectibility on an employee's retirement. Rather, the challenged enactment concerns only how a pensioner is to dispose of his benefit payment and whether he is to enjoy it unhindered by the judicially declared needs of those dependent upon him, a matter recognized as falling within traditional areas of state, rather than federal, concern. See Ray v. Atlantic Richfield Co., 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); Wissner v. Wissner, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950); Biles v. Biles, 163 N.J. Super. 49 (Ch. Div. 1978). N.J.S.A. 2A:17-56.1 does no "major damage" to "clear and substantial" federal interests. Hisquierdo v. Hisquierdo, supra.
In the absence of conflict with the express or even implied conditions of the act, we are unable to conclude from such a *426 remote effect that the enactment is preempted by § 1144(a) of ERISA. Where not inconsistent with ERISA's commands and where not subversive of its announced objectives and design, we discern no basis for inferring a congressional intent to frustrate the implementation of essential and important state policy. See Steller v. Steller, 97 N.J. Super. 493 (App. Div. 1967); Thiel v. Thiel, 41 N.J. 446 (1964); Fischer v. Fischer, 13 N.J. 162, 165-166 (1953).
Hence, we conclude that the remaining issue upon which this appeal turns is whether the anti-assignment provision of ERISA is inconsistent with N.J.S.A. 2A:17-56.1. If it is, then the Supremacy Clause dictates that the New Jersey enactment must fall; if it is not inconsistent, then it survives and the order Western is challenging may be implemented.
Preliminarily, we note that the anti-assignment code provision which we have earlier quoted does not expressly proscribe subjection of pension benefits to the varying forms of execution by way of court process. The provision is thus clearly distinguishable from other federal enactments which quite clearly, and in traditional language, express the intent to insulate benefit payments from the reach of creditors. See, e.g., the exemption sections of the Social Security Act, 42 U.S.C.A. § 407; the Veterans Benefit Act, 38 U.S.C.A. § 3101(a); and the Railway Retirement Act, 45 U.S.C.A. § 231(m). Notwithstanding this absence of the usual indications of an intent to exempt benefits from compulsory court process, however, the Treasury Department, in regulations already referred to, has imbued the anti-assignment provisions of ERISA with that expansive meaning, Treas. Reg. § 1.401(a)-13, 43 C.F.R. 6942-44 (1978), and the courts, deferring to the presumed authority of the administrative agency entrusted with implementing statutory command, have, without serious inquiry, adopted that interpretation. See, e.g., Cartledge v. Miller, 457 F. Supp. 1146, 1154 n. 39 (S.D.N.Y. 1978). We are, however, unconcerned with *427 the effect of the anti-assignment provision on the rights of creditors in general to reach pension benefit payments and leave resolution of that issue to a more appropriate case. Our concern here is with the right of a former spouse, judicially declared entitled to alimony from the pensioner, to satisfy the latter's obligation from his pension payments. We entertain no doubt but that the anti-assignment provision was never intended to obstruct such recourse.
Even where Congress expressly put benefit payments beyond the reach of creditors, such funds have been made available to satisfy family support obligations. See, e.g., Texas Baptist Children's Home v. Corbitt, 321 S.W.2d 610 (Tex. Civ. App. 1959); Brown v. Brown, 32 Ohio App.2d 139, 288 N.E.2d 852 (App. Ct. 1972); Huskey v. Batts, 530 P.2d 1375 (Okl. Ct. App. 1974); cf. Cohen v. Murphy, 368 Mass. 144, 330 N.E.2d 473 (1975) (federal disability benefits received by former husband, which included benefits for minor children, should be credited to husband's support order).
Indeed, federal pension benefits, which have for some time been made expressly exempt from attachment, execution, levy and garnishment, can now be used to satisfy alimony and support obligations of the pensioner to the extent permitted by statute. 42 U.S.C.A. § 659(a). Western has failed to provide us with a satisfactory explanation of why Congress would be more solicitous of private pensioners than it is of federal pensioners and why it would make federal pension benefits subject to alimony and support obligations while insulating private pension benefits from the same type of claim. Protection of the pension fund as a reason for the difference is unpersuasive. Benefit payments must be made, if not to the pensioner then to his dependent children or spouse; in either case, the impact on the fund is the same except, perhaps, for the costs of administration, a matter as to which Congress has expressed no particular concern. Moreover, the preservation of support obligations from a discharge in bankruptcy was originated by a court decision *428 which preceded codification of that holding in the Bankruptcy Act. See Wetmore v. Markoe, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904); 11 U.S.C.A. § 35(a) (7). We are reluctant to attribute to Congress an intent to preserve a bankrupt's obligation of support from a discharge in bankruptcy while immunizing private pension funds of wholly solvent pensioners from such obligations.
With some few exceptions, case law interpreting the recently enacted ERISA is in accord with these views. See, e.g., Stone v. Stone, 450 F. Supp. 919 (N.D. Cal. 1978), app. filed No. 78-2813 (9 Cir. May 26, 1978); Cody v. Riecker, 454 F. Supp. 22 (E.D.N.Y. 1978); Cartledge v. Miller, 457 F. Supp. 1146 (S.D.N.Y. 1978); Biles v. Biles, 163 N.J. Super. 49 (Ch. Div. 1978); Ward v. Ward, 164 N.J. Super. 354 (Ch. Div. 1978). Contra, Francis v. United Technologies Corp., 458 F. Supp. 84 (N.D. Cal. 1978). Of considerable significance is the fact that in Cartledge v. Miller, 457 F. Supp. at 1156, the amicus brief filed on behalf of the Departments of Labor and the Treasury, agencies charged with enforcement and interpretation of ERISA and whose regulations have been used to interpret the statutory proscription against assignment and alienation to include all forms of involuntary assignment, took the position that "family support decrees were not intended to be within the scope of the anti-alienation provisions of ERISA." The same deference due the Treasury Department's interpretation of ERISA to include a proscription against all forms of execution must be given to its interpretation thereof that such proscription does not embrace family support decrees. Hence, when the anti-assignment provision of ERISA is read in light of the judicial interpretations of its scope, comparable statutes, concomitant congressional action[4] and administrative interpretation, *429 and the total absence of any direct statutory indications to the contrary, one is compelled to conclude that Congress never intended the grossly unjust result of permitting a private pensioner the full enjoyment of his pension benefits while consigning his dependents, adjudicated in need of his support, to a life of penury. That Congress had no such intention is made abundantly clear from its announced objective in inacting ERISA to protect not only the pensioner himself but his dependents and beneficiaries. 29 U.S.C.A. § 1001(a). Rather than intending to frustrate the adjudicated rights of a pensioner's dependents, Congress intended that employees and their dependents be protected. It would indeed be an irony that despite this announced intention, and in the absence of any direct indications to the contrary, ERISA be interpreted as depriving, rather than benefitting, those intended beneficiaries of congressional concern.
Concern over the satisfaction of family law decrees has not been confined to Congress. New Jersey, too, upholds the solemnity of a breadwinner's obligation to support those dependent upon him despite statutory exemptions from various forms of execution. See Steller v. Steller, 97 N.J. Super. 493 (App. Div. 1967); Thiel v. Thiel, 41 N.J. 446 (1964); Fischer v. Fischer, 13 N.J. 162 (1953). Indeed, the general law of spendthrift trusts, at least in those states in which those kinds of trusts are enforced, reflects the same approach. As noted in 2 Scott, The Laws of Trusts, § 157.1 at 1210 (1967):
Even though it is clear that the settlor intended to exclude the beneficiary's wife and children from enforcing their claims for support against his interest in the trust, it has been held in some cases that they are not thereby precluded from reaching the trust estate. *430 This result has been reached on the ground that it is against public policy to permit the beneficiary to have the enjoyment of the income from the trust while he refuses to support his dependents whom it is his duty to support. The claim of a wife and dependent children to support is based upon the clearest grounds of public policy. They are in quite a different position from ordinary creditors who have voluntarily extended credit. It would be shocking indeed to permit a husband to receive and enjoy the whole of the income from a large trust fund and to make no provision for his needy dependents. [Footnote omitted]
The few cases holding to a contrary result are criticized therein.
In summary, we have not the slightest doubt that Congress did not intend the anti-assignment provision of ERISA to work such a monstrous injustice upon those dependents of a private pensioner who were among the announced beneficiaries of congressional concern. In the absence of a direct congressional expression that such a shocking result was intended, a conclusion to that effect would be totally unwarranted. Hence, Western's concern over the protected status of its pension plan, should it honor the order of garnishment here under challenge, is unnecessary.
Affirmed.
NOTES
[1] Sec. 8.2 of Western's Plan for Employees' Pensions, Disability Benefits and Death Benefits provides:

Assignment or alienation of pensions or other benefits under these Regulations will not be permitted or recognized.
This language specifically tracks the required statutory language found in 29 U.S.C.A. § 1056(d) (1).
[2] The Regulations provide in pertinent part:

(b) (1) General rule. Under section 40(a)13, a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process
* * *
(d) (1) Certain voluntary and revocable assignments or alienations. Notwithstanding paragraph (b) (1) of this section, a plan may provide that once a participant or beneficiary begins receiving benefits under the plan, the participant or beneficiary may assign or alienate the right to future benefit payments provided that the provision is limited to assignments or alienations which 
(i) Are voluntary and revocable;
(ii) Do not in the aggregate exceed 10 percent of any benefit payment; and
(iii) Are neither for the purpose, nor have the effect, of defraying plan administration costs.
For purposes of this subparagraph, an attachment, garnishment, levy, execution, or other legal or equitable process is not considered a voluntary assignment or alienation.
[3] Article VI, cl. 2 states:

This Constitution and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
[4] In recent congressional action, Senator Harrison Williams, Jr., co-sponsor of the original legislation, has proposed "refinements" to ERISA. Included would be a provision which "makes it clear [that the anti-assignment and anti-alienation provisions] are not to be applied to defeat court orders requiring alimony or child support payments * * *." 125 Cong. Rec. S558 (daily ed. January 24, 1979).