OPERATING ENGINEERS' LOCAL # 428 PENSION TRUST FUND, a Trust; and Larry Dugan, Jr.; Charles K. Featherstone; Logan Wilkins; James R. MacDonald; J. Snead Parker; Robert R. Showers, Plaintiff-Appellants,

v.

Elizabeth K. ZAMBORSKY and the Honorable Morris Rozar, Judge of the Superior Court, Maricopa County, Arizona, Defendant-Appellees.

No. 79–3373.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 1981.

Decided July 6, 1981.

sion benefits otherwise payable to her ex-husband Ernest Zamborsky. Jurisdiction was proper under 29 U.S.C. § 1132 (a)(3)(B)(ii) and (e)(1) (1976). *See Carpenters Pension Trust v. Kronschnabel,* 632 F.2d 745 (9th Cir. 1980). We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## FACTS[1]

On April 1, 1971, in Cause No. D–117851 in the Maricopa County, Arizona Superior Court, Elizabeth Zamborsky obtained a judgment and decree of divorce against Ernest Zamborsky. Additionally, the Maricopa County Superior Court ordered that Ernest Zamborsky pay to Elizabeth Zamborsky $200.00 per month. The Superior Court further ordered that Ernest Zamborsky be awarded, as his sole and separate property, several items of real and personal property, among which was "any and all benefits accruing as the result of defendant's employment."

Subsequently, Ernest Zamborsky retired and began receiving a monthly pension in an amount somewhat greater than $300.00 per month from Operating Engineers' Local No. 428 Pension Trust Fund (the Trust).

At some point thereafter, Ernest Zamborsky began to fail to pay spousal maintenance as required by the aforementioned decree. As a result, Elizabeth Zamborsky filed a motion in the Maricopa County Superior Court seeking an order directing the Trust to pay the pension benefits directly to her. On December 5, 1977, the Maricopa County Superior Court issued an order finding that Ernest Zamborsky was more than six months in arrears in his payments of spousal maintenance and ordering the Trust to pay to the Clerk of the Maricopa County Superior Court the sum of $200.00 per month. It is uncontested that such an order was proper under section 25–323 of Ariz.Rev.Stat.Ann. (West 1980 Supp.).

Richard Minne, Phoenix, Ariz., for plaintiff-appellants.

John M. Tomanek, Hash, Cantor & Tomanek, Phoenix, Ariz., for defendant-appellees.

Before SKOPIL and FARRIS, Circuit Judges, and BELLONI *, District Judge.

BELLONI, District Judge:

This appeal presents issues arising under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.* (1976 & Supp. II 1978). Plaintiff-appellants appeal from a decision of the United States District Court for the District of Arizona (Muecke, J.) refusing to enjoin enforcement of a state court's garnishment order requiring plaintiff-appellant Operating Engineers' Local # 428 Pension Trust Fund to pay directly to defendant-appellee Elizabeth Zamborsky a portion of the pen-

* Honorable Robert C. Belloni, United States District Judge, District of Oregon, sitting by designation.

1. This summary of pertinent facts is based on the agreed statement of facts which was submitted as the record on appeal. For additional factual information, see the District Court's opinion reported at 470 F.Supp. 1174.

The Trust did not make payments as directed. On April 18, 1978, after a hearing to show cause why it should not be held in contempt, the Honorable Morris Rozar, Judge of Maricopa County Superior Court, entered a judgment decreeing that the Trust pay to Elizabeth Zamborsky the sum of $1000.00 representing accrued payments due, and thereafter pay to Elizabeth Zamborsky $200.00 per month as previously ordered.

In response to this order the Trust and its administrators filed this action in the United States District Court for the District of Arizona, seeking an injunction preventing enforcement of Judge Rozar's order. Both Judge Rozar and Elizabeth Zamborsky are named as defendants. Upon filing of the action, the District Court issued a temporary restraining order enjoining the defendant-appellees from proceeding with the state court proceedings. However, subsequently, the District Court denied plaintiff-appellants' request for a similar permanent injunction. *See Operating Engineers' Local # 428 Pension Trust Fund v. Zamborsky*, 470 F.Supp. 1174 (D.Ariz.1979). Thereafter, this appeal was taken.

## ISSUES

Plaintiff-appellants contend that ERISA pre-empts section 25–323 of Ariz.Rev.Stat. Ann. (West 1980 Supp.) insofar as it allows the garnishment of pension benefits due to an individual from an ERISA qualified and regulated pension trust fund. Mrs. Zamborsky contends that assuming that ERISA precludes garnishments generally[2] an implied exception to ERISA's provisions allows a garnishment by an ex-spouse for the purpose of satisfying a court-ordered spousal maintenance obligation. Alternatively, she contends that the District Court was justified in refusing to issue the injunction

enjoining the state court proceedings, because such an injunction is prohibited by the Anti-Injunction Act, 28 U.S.C. § 2283 (1976).[3]

## DISCUSSION

Plaintiff-appellants primarily rely upon two separate provisions of ERISA. First, they contend that section 514(a) of ERISA, 29 U.S.C. § 1144(a) (1976), explicitly pre-empts the state law at issue. Section 514(a) provides that ERISA "shall supersede any and all State laws insofar as they ... relate to any employee benefit plan ...." Second, they contend that section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1) (1976), conflicts with the state law at issue and, therefore, pre-empts it. Section 206(d)(1) provides that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

At the outset, we note that virtually every court which has addressed this issue has found that ERISA does not preclude the sort of garnishment at issue here. *See American Telephone & Telegraph Co. v. Merry*, 592 F.2d 118 (2d Cir. 1979); *Cody v. Riecker*, 454 F.Supp. 22 (E.D.N.Y.1978), affirmed, 594 F.2d 314 (2d Cir. 1979); *Central States, Southeast & Southwest Areas Pension Fund v. Parr*, 480 F.Supp. 924 (E.D. Mich.1979); *Senco of Florida, Inc. v. Clark*, 473 F.Supp. 902 (M.D.Fla.1979); *Cartledge v. Miller*, 457 F.Supp. 1146 (S.D.N.Y.1978); *Western Electric Co. v. Traphagen*, 166 N.J. Super. 418, 400 A.2d 66 (1979); *Biles v. Biles*, 163 N.J.Super. 49, 394 A.2d 153 (1978); *Cogollos v. Cogollos*, 93 Misc.2d 406, 402 N.Y.S.2d 929 (Sup.Ct.1978); *Wanamaker v. Wanamaker*, 93 Misc.2d 784, 401 N.Y. S.2d 702 (Fam.Ct.1978). The only case to address this precise issue and reach a con-

2. Because of the manner in which we resolve this appeal, it is not necessary that we reach this issue. We assume, without deciding, that ERISA does preclude garnishments generally. We note, however, that there is presently a split of authority on this issue. *See General Motors Corp. v. Buha*, 623 F.2d 455 (6th Cir. 1980) (holding that ERISA precludes garnishments generally); *National Bank of N. America*

v. IBEW, 69 A.D.2d 679, 419 N.Y.S.2d 127 (holding that ERISA does not preclude any garnishment), appeal dismissed, 48 N.Y.2d 752, 397 N.E.2d 1333, 422 N.Y.S.2d 666 (1979).

3. Because of the manner in which we resolve this appeal, we do not reach defendant-appellees alternative contention.

trary result[4] is *General Motors Corp. v. Townsend*, 468 F.Supp. 466 (E.D.Mich. 1976).[5]

We recognize that plaintiff-appellants' argument has a certain logical appeal. Nonetheless, we agree with the cases cited above that the sort of garnishment at issue here is not pre-empted by ERISA. It is impliedly excepted from ERISA's pre-emption provision, 29 U.S.C. § 1144(a) (1976), and it is not in conflict with ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1) (1976).

SECTION 514(a)

■ For a number of reasons, it would be unreasonable to construe ERISA's pre-emption provision as precluding an individual from garnishing her or his ex-spouse's pension benefits in order to satisfy a court-ordered spousal maintenance obligation. Of primary importance is the fact that it is extremely unlikely that Congress intended such a result. First of all, both Congress and the courts have long recognized that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 852–53, 34 L.Ed. 500 (1890). It has often been stated that one should always "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Accordingly, courts generally interpret statutes with the presumption that Congress did not intend to interfere with state domestic relations law. For example, before Congress statutorily excepted spouse and child support obligations from discharge in bankruptcy, in *Wetmore v. Mar-*

*koe*, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904), the Supreme Court interpreted the Bankruptcy Act as impliedly excepting such obligations. The Court stated in language which is particularly pertinent to the present case that

[u]nless positively required by direct enactment the courts should not presume a design upon the part of Congress in relieving the unfortunate debtor to make the law a means of avoiding enforcement of the obligation moral and legal, devolved upon the husband to support his wife and to maintain and educate his children.

*Id.* at 77, 25 S.Ct. at 175. Moreover, within recent years the Court has reaffirmed these principles. In *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), the Court clearly sets out the standard by which this case must be judged:

"The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the State and not to the laws of United States." . . .

On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has "positively required by direct enactment" that state law be pre-empted. . . . A mere conflict in words is not sufficient. State family and family property law must do "major damage" to "clear and substantial" federal interests before the Supremacy Clause will demand that state law be overridden.

*Id.* at 581, 99 S.Ct. at 808. (Citations omitted.)

By enacting ERISA, Congress has not "positively required by direct enactment" that garnishments of the sort at issue here be pre-empted. Moreover, it cannot be said

---

**4.** Plaintiff-appellants rely on *Francis v. United Technologies Corp.*, 458 F.Supp. 84 (N.D.Cal. 1978) and *Kerbow v. Kerbow*, 421 F.Supp. 1253 (N.D.Tex.1976). These cases involve slightly different facts, but more important they are directly contrary to two recent decisions of this Court. *See Stone v. Stone*, 632 F.2d 740 (9th Cir. 1980); *Carpenters Pension Trust v. Kronschnabel*, 632 F.2d 745 (9th Cir. 1980).

**5.** The reasoning used and the result reached in *Townsend* were subsequently rejected by another decision out of the same district. *See Central States, Southeast & Southwest Areas Pension Fund v. Parr*, 480 F.Supp. 924 (E.D. Mich.1979).

that these garnishments "do 'major damage' to 'clear and substantial' federal interests." Indeed, portions of ERISA suggest that interpreting ERISA as precluding the sort of garnishment here at issue would be directly contrary to its goals and purposes. In section 2 of ERISA, 29 U.S.C. § 1001 (1976), Congress made certain findings. Of particular relevance is its statement that it finds "that the continued well-being and security of millions of employees and their *dependents* are directly affected by ... [employee pension benefit] plans." (Emphasis added.) This establishes that Congress was not only concerned with the welfare of employee participants, but also with the welfare of dependents of employee participants. Therefore, to now hold that ERISA may be used as a means to frustrate enforcement of the obligation of an employee participant to support his dependent spouse *would be contrary to* Congress's purposes in enacting ERISA. Accordingly, we conclude that a state law, such as the one at issue today, which allows an individual to garnish his or her ex-spouse's pension benefits is impliedly excepted from ERISA's pre-emption provision, 29 U.S.C. § 1144(a).

This conclusion is supported by two additional factors. First, the *amicus curiae* position of an agency charged with the principal enforcement of an act should be carefully considered. *See Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.,* 441 U.S. 1, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979). The Department of the Treasury and the Department of Labor are the agencies charged with the principal enforcement of ERISA. Although no *amicus curiae* brief was submitted in this appeal, we take note that in other cases in which the exact same issue was presented these departments submitted such a brief which urged the court to find an implied exception. *Cartledge v. Miller,* 457 F.Supp. 1146 (S.D.N.Y.1978).

Second, there appears to be no merit to plaintiff-appellants' contention that if the garnishment is allowed the Trust will be denied an advantageous federal income tax status. Section 401(a)(13) of the Internal Revenue Code, 26 U.S.C. § 401(a)(13) (1976), provides that an employee retirement trust shall not be qualified for certain advantageous tax treatment "unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." Plaintiff-appellants have done everything which section 401(a)(13) requires; they have included such a provision within the plan. The Internal Revenue Service has taken the official position that nothing else is required and that "a plan will not lose its qualification under section 401(a) of the Code merely because the trustee complies with a court order requiring deductions from the benefits of a participant in pay status for alimony or support payments." Rev.Rul. 80–27, 1980–1 C.B. 85.

SECTION 206(d)(1)

 Plaintiff-appellants argue that regardless of whether the state law at issue is explicitly pre-empted by ERISA's pre-emption provision, 29 U.S.C. § 1144(a), it is implicitly pre-empted because it conflicts with section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1). Plaintiff-appellants are correct that "[e]ven if Congress has not completely foreclosed state legislation in a particular area, a state statute is void to the extent that it actually conflicts with a valid federal statute." *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 158, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978). This rule is, of course, mandated by the Supremacy Clause of the United States Constitution.

Two tests *must be applied to determine* whether or not a conflict exists. "A conflict will be found 'where compliance with both federal and state regulations is a physical impossibility...,' *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43 [83 S.Ct. 1210, 10 L.Ed.2d 248] (1963), or where the state 'law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' *Hines v. Davidowitz,* 312 U.S. 52, 67 [61 S.Ct. 399, 85 L.Ed. 581] (1941); *Jones v. Rath Packing Co.,* [430 U.S. 519] 526, 540–41 [97 S.Ct. 1305, 51 L.Ed.2d 604] (1977)." *Id.* The resolution of the first test is clear. It cannot be said that it is physi-

cally impossible for plaintiff-appellants to comply with both section 206(d)(1) and the state court garnishment order. On its face, section 206(d)(1) simply requires that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." Plaintiff-appellants have satisfied this provision and complying with the garnishment order will not change this fact.

Resolution of the second test reaches the same result, because it cannot be said that the garnishment at issue "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* All of the factors previously discussed which support the conclusion that section 514(a) should be interpreted as impliedly excepting the garnishment at issue are also applicable here. It was not the purpose and objective of Congress to provide a means by which an individual can effectively frustrate enforcement of a court-ordered spousal maintenance obligation. The main purpose of section 206 is to "ensure that the employee's accrued benefits are actually available for retirement purposes." H.R.Rep.No. 93–807, 93rd Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Ad.News, 4670, 4734. Allowing the present garnishment will not frustrate this objective.

## EFFECT OF RECENT DECISIONS

The result reached above is strongly supported, if not mandated, by a recent decision of this court. In *Carpenters Pension Trust v. Kronschnabel*, 632 F.2d 745 (9th Cir. 1980), this court held that ERISA did not pre-empt a state court order requiring an ERISA qualified and regulated employee retirement trust to pay directly to a non-employee ex-spouse, as part of a community property award established through divorce proceedings, pension benefits otherwise payable to her ex-husband. In reaching this conclusion, the court relied exclusively upon a summary dismissal for lack of a substantial federal question entered by the United States Supreme Court in *Carpenter's Pension Trust Fund v. Campa*, 444 U.S. 1028, 100 S.Ct. 696, 62 L.Ed.2d 664 (1980). The *Kronschnabel* court held that because the dismissal in *Campa* was an adjudication on the merits and because precisely the same issue was presented in both cases, *Campa* was controlling.

The only factual difference between *Kronschnabel* and the present case is that the non-employee ex-spouse in *Kronschnabel* premised her entitlement to the pension benefits upon an award of community property established through divorce proceedings, whereas Mrs. Zamborsky premises her entitlement upon a support decree entered at the time of her divorce. The obvious argument to be advanced in attempting to distinguish *Kronschnabel* is that in the community property situation there clearly is no conflict with ERISA's anti-assignment provision, because there is no assignment but rather a severance of a joint interest.[6] However, the weakness of this argument was pointed out in a well reasoned opinion by Judge Renfrew:

> This mode of analysis focuses on whether the nonemployee spouse's claim is an ownership or creditor interest, but the characterization of the interest under state property law does not affect the degree of conflict with the purposes of the federal statute, [and it is this conflict] which determines whether state law is preempted. .... The substance of the spousal claim to marital property conflicts no more or no less with § 206(d)(1) because of the form in which it is asserted.

*Stone v. Stone*, 450 F.Supp. 919, 925–26 (N.D.Cal.1978), *aff'd* 632 F.2d 740 (9th Cir. 1980).

---

**6.** This was the basis of the California Court of Appeals decision in *Campa*. *In Re Marriage of Campa*, 89 Cal.App.3d 113, 152 Cal.Rptr. 362 (1979), *appeal dismissed sub nom. Carpenters Pension Trust Fund v. Campa*, 444 U.S. 1028, 100 S.Ct. 696, 62 L.Ed.2d 664 (1980). See also this Court's holding in *Stone v. Stone*, 632 F.2d 740 (9th Cir. 1980), that a spouse in a community property state is a "participant" in her or his spouse's pension plan as the term is used in § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), which grants federal district courts original jurisdiction over actions brought by a participant.

Regardless of whether *Kronschnabel* is distinguishable, it is at least persuasive authority. This is true not only because it is very similar factually, but also because there is reason to believe that if Congress was to make a distinction between community property awards and spousal maintenance awards, it would provide greater rights to individuals attempting to satisfy a spousal maintenance award than to individuals attempting to satisfy a community property award. Congress has provided that pension benefits for federal employees shall be an available source from which to satisfy an award of child support or alimony, but that they shall not be subject to a community property split-up. 42 U.S.C. §§ 659(a) and 662(c) (Supp. III 1979); *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979). Justice Blackmun suggests that Congress made this distinction as to federal employee pension benefits based on the fact that child support and alimony are related to need, whereas community property awards are not. *Id.* at 587, 99 S.Ct. at 811. To now hold, as plaintiff-appellants urge us to hold, that ERISA precludes garnishment to satisfy a support order, when *Kronschnabel* has already conclusively established in this circuit the rule that ERISA does not preclude garnishment to satisfy a community property award, would produce a situation with respect to employee pension plans in the private sector that would be directly contrary to the situation mandated by Congress with respect to federal employee pension plans. It is entirely unreasonable to assume that Congress could have intended such a result.

Affirmed.

