STEIN DISTRIBUTING COMPANY, INC., Petitioner,

v.

DEPARTMENT OF the TREASURY BUREAU OF ALCOHOL, TOBACCO & FIREARMS, Respondent.

No. 84–7870.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 11, 1985.

Decided Jan. 3, 1986.

B. Newal Squyres, Jr., Boise, Idaho, for petitioner.

Robert B. Nicholson, Steve Macisaac, Dept. of Justice, Washington, D.C., for respondent.

Before GOODWIN, ALARCON and POOLE, Circuit Judges.

POOLE, Circuit Judge:

## FACTS

Stein Distributing Co., Inc. (Stein) is the largest wholesaler of beer and wine in the Boise, Idaho area. Stein and other wholesalers routinely prepared schematic diagrams for its retail customers, diagramming proposed product arrangements in retailers' beer and wine sections. In addition, Stein provided labor to arrange or "reset" the beer and wine sections in accordance with the schematic diagrams. In the process of providing these services, Stein would often move the wine products of its competitors, as well as its own products.

In August, 1979, an inspector of the Bureau of Alcohol, Tobacco and Firearms (the Bureau) told Stein's president that the services it provided to retailers constituted a violation of the "tied house" provision of the Federal Alcohol Administration Act (the Act), 27 U.S.C. § 205(b)(3) (1982).[1] In January, 1981, Stein was again informed that the Bureau considered its actions to be a violation of federal law. On October 28, 1982, the Bureau issued an order to show cause, charging violations by Stein of the tied house provision and implementing regulations. The Bureau alleged that Stein violated the Act by providing "things of value" to retailers which induced them to purchase wine and beer sold by Stein to the exclusion of similar products sold by other wholesalers. The "things of value" provided by Stein were the furnishing of schematic diagrams and the labor necessary to

reset retailers' entire beer and wine sections, including the labor to reset the products of Stein's competitors. At a hearing in February 1983, an Administrative Law Judge determined that the Bureau had proven these allegations with respect to three retail chains.

On petition for review, the Director of the Bureau examined the administrative record and found that the record supported the ALJ's findings. However, the Director modified the portion of the ALJ's decision that held that Stein's beer wholesaling activities violated federal law. The Director noted that under 27 U.S.C. § 205(f) (1982), the prohibitions of the tied house provision apply in cases involving beer only to the extent that state law imposes restrictions similar to those of federal law regulating transactions between wholesalers and retailers. Because the Director determined that Stein's conduct did not violate Idaho law, he concluded that the Bureau lacked jurisdiction under section 205(f) with respect to Stein's activities concerning beer. In addition, the Director reduced the suspension of Stein's permits from forty-five days to seven days. Stein now appeals that suspension. We affirm the Director's order.

## DISCUSSION

### I.

Stein argues that it has a right by virtue of the Twenty-first Amendment[2] to perform the services in question because such conduct is expressly authorized by Idaho law. In order to assess this argument, it is necessary to examine the Twenty-first

---

1. The tied house provision of the Act, 27 U.S.C. § 205(b) (1982), was designed to prevent producers, importers, and wholesalers from engaging in certain practices that might induce retailers to purchase products "to the exclusion in whole or in part" of products from other producers, importers, and wholesalers in interstate commerce, where the "direct effect of such inducement is to prevent, deter, hinder or restrict other persons from selling or offering for sale any such products to such retailer in interstate or foreign commerce* * * *" *Id.* § 205(b). Stein's permits were suspended for violations of

§ 205(b)(3) of the Act, which prohibits wholesalers from providing "thing[s] of value" to retailers when such action has the effect of inducing retailers to exclude the products of other wholesalers.

2. The transportation or importation into any state, territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.
U.S. Const. Amend. 21, § 2.

Amendment and the federal and Idaho statutes that regulate wholesalers of alcoholic beverages.

Under section 2 of the Twenty-first Amendment, the states enjoy broad powers to regulate the importation and use of alcoholic beverages within their borders. *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 104 S.Ct. 2694, 2707, 81 L.Ed.2d 580 (1984). The primary effect of the amendment is to create an exception to the normal operation of the Commerce Clause. *Craig v. Boren,* 429 U.S. 190, 206, 97 S.Ct. 451, 461, 50 L.Ed.2d 397 (1976). Although the federal government retains Commerce Clause authority to regulate interstate commerce in liquor, *Capital Cities,* 104 S.Ct. at 2707, the Commerce Clause must "be considered in the light of the [Twenty-first Amendment], and in the context of the issues and interests at stake in any concrete case." *Hostetter v. Idlewild Bon Voyage Liquor Corp.,* 377 U.S. 324, 332, 84 S.Ct. 1293, 1298, 12 L.Ed.2d 350 (1964).

The statutes at issue in this case are the tied house provision of the Act, 27 U.S.C. § 205(b)(3) (1982), Bureau regulation 27 C.F.R. § 6.99 (1985), and Idaho Code §§ 23–1325, 23–1325A (Supp.1985). The regulation permits wholesalers to rotate, stock, and price the liquor products they sell to the retail store, provided that the liquor products of other wholesalers are not disturbed. The rearranging or resetting of all or part of a retail store is not authorized. 27 C.F.R. § 6.99 (1985). In its discussion of this regulation, the Bureau emphasized that a wholesaler "is prohibited from disturbing products sold by another [wholesaler], or from resetting an entire store or liquor department." Supplemental Information, 45 Fed.Reg. 63241, 63248 (1980) (codified at 27 C.F.R. § 6.1–11.46).

As in federal law, Idaho law prohibits wholesalers from providing things of value to retailers, except as expressly permitted by the statute itself. Idaho Code § 23–1325 (Supp.1985). In contrast to federal law, Idaho law does not require that any particular adverse effect flow from the provision of a "thing of value." In addition, the Idaho law expressly permits wholesalers, with the permission of the retailer, to reset all wine upon the retailers' shelves. *Id.* § 23–1325A. The Idaho legislature clearly intended to permit wholesalers to remove another wholesaler's wine from the retailer's shelves and to relocate *all* wine upon the shelves with the retailer's permission. *Id.* (Legislative statement of purpose).

**II.**

Stein argues that its conduct is protected from federal prohibitions because it is expressly authorized by Idaho law. The Supreme Court has decided, however, that a state has "virtually complete" control only over interests that engage the "core powers" reserved to the states by the Twenty-first Amendment—"that of exercising 'control over whether to permit importation or sale of liquor and how to structure the liquor distribution system.'" *Capital Cities,* 104 S.Ct. at 2709 (quoting *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. 97, 110, 100 S.Ct. 937, 945, 63 L.Ed.2d 233 (1980)).

The Idaho statute permitting wholesalers to reset retailers' wine sections involves neither the state interest in controlling the importation of liquor into the state nor the state interest in structuring the liquor distribution system. The statute is wholly permissive and merely exempts specific restocking activities from a strict state prohibition against wholesalers providing "thing[s] of value" to retailers. Cases upholding state statutes as involving Twenty-first Amendment "core powers" have involved more significant state interests than the ones at issue. *See, e.g., Midcal,* 445 U.S. at 107 & n. 10, 100 S.Ct. at 944 & n. 10 (states may prohibit the importation of liquor entirely); *Ziffrin, Inc. v. Reeves,* 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128 (1939) (upholding state statute prohibiting a domestic manufacturer of liquor from delivering his product to an unlicensed private carrier); *Indianapolis Brewing Co. v. Liquor Control Commission,* 305 U.S. 391, 394, 59 S.Ct. 254, 255, 83 L.Ed. 243 (1939)

(upholding Michigan statute prohibiting Michigan dealers from selling beer manufactured in a state which discriminated against Michigan beer).

■ Moreover, the Supreme Court has determined that state interests more significant than those involved here were nevertheless not "core powers" reserved to the states by the Twenty-first Amendment. In *Capital Cities*, for example, the court held that an Oklahoma ban on televised liquor advertising engaged Twenty-first Amendment core powers "only indirectly," even though the ban was designed to discourage liquor consumption within the state. 104 S.Ct. at 2709. In *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), the Supreme Court held that a twenty percent Hawaii state tax on liquor sales that exempted locally produced liquor was not supported by any clear Twenty-first Amendment concerns, even though the purpose of the statute was to promote local industry. *Id.*, 104 S.Ct. at 3058–59. These cases suggest that the state interest in allowing wholesalers to restock the wine shelves of retailers is not sufficiently significant to be considered a Twenty-first Amendment "core power." Therefore, we find that the strong federal interest in preventing wholesaler dominion and control over retail outlets should prevail over the less substantial state interest. *Accord Capital Cities*, 104 S.Ct. at 2709 (when a state's "core power" under the Twenty-first Amendment is not directly implicated, "the balance between state and federal power tips decisively in favor of the federal law, and enforcement of the state statute is barred by the Supremacy Clause."). *But cf. Brown-Forman Distillers Corp. v. State Liquor Authority*, 64 N.Y.2d 479, 490 N.Y.S.2d 128, 479 N.E.2d 764 (New York statutory requirement that liquor distillers affirm that they will not sell liquor to wholesalers in New York state at a higher price than that at which the same item is sold anywhere else in the nation does not violate the Commerce Clause), *prob. juris. noted*, —— U.S. ——, 106 S.Ct. 55, 88 L.Ed.2d 45 (1985).

### III.

■ Moreover, we find that the Twenty-first Amendment is not implicated because there is no conflict between the Idaho and federal laws. The Supreme Court has emphasized that federal courts should not seek out conflicts between federal and state regulations where none clearly exists. *Joseph E. Seagram & Sons, Inc., v. Hostetter*, 384 U.S. 35, 45, 86 S.Ct. 1254, 1261, 16 L.Ed.2d 336 (1966). The Supreme Court has said that two tests must be applied to determine whether a conflict exists: A conflict will be found "where compliance with both federal and state regulations is a physical impossibility * * *," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or where the state "law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); *Jones v. Rath Packing Co.*, 430 U.S. 519, 526, 540–41, 97 S.Ct. 1305, 1310, 1317, 51 L.Ed.2d 604 (1977). The Ninth Circuit has adopted the Supreme Court's test of conflict. *See Operating Engineers' Local #428 Pension Trust Fund v. Zamborsky*, 650 F.2d 196, 200 (9th Cir.1981).

■ The statutes involved in this case do not conflict under either of the Supreme Court's standards. Idaho law does not *require* wholesalers to reset the wine shelves of retailers. This is not, therefore, a case where state law compels conduct prohibited by federal law. *Cf. Capital Cities*, 104 S.Ct. at 2709 (state constitution banning all televised liquor advertisements, including advertisements retransmitted by state cable television systems, necessarily conflicted with federal law prohibiting cable operations from altering television signals); *Midcal*, 445 U.S. at 103, 100 S.Ct. at 942 (state statute requiring all wine wholesalers to file fair trade contracts or price schedules in all circumstances violated general antitrust law). In fact, Stein's activities in providing schematic diagrams to retailers

and providing labor to reset the retailers' wine sections would not in all circumstances violate the Act. The tied house provision requires a showing that the "thing of value" provided by the wholesaler (including the restocking services prohibited by 27 C.F.R. § 6.99 (1985)) served as an inducement to the retailer to exclude products sold by other wholesalers. Therefore, it would be possible for a wholesaler to comply with both federal and Idaho law by providing services that do not induce the retailer to exclude the products of other wholesalers. *Cf. Joseph E. Seagram & Sons*, 384 U.S. at 45, 86 S.Ct. at 1261 ("We find no such clear conflict * * * [when state law] imposes no irresistible economic pressure on the appellants to violate [federal law] in order to comply with the requirements of [state law].").

In addition, requiring wholesalers to comply with federal law does not stand as an obstacle "to the accomplishment and execution of the full purposes and objectives of" state law. *Zamborsky*, 650 F.2d at 200. The Idaho legislature clearly intended to permit wholesalers to move competitors' products as well as their own products when resetting a retailer's wine shelves. *See* Idaho Code § 23–1325A (Supp.1985) (Legislative Statement of Purpose). Stein, however, admits that Idaho Code sections 23–1325 and 23–1325A were modeled on the federal Act's tied house provision and were designed to prevent some of the evils that led to Prohibition. It would be incongruous to argue, therefore, that the Idaho statute was intended to shield wholesalers from the federal tied house provision. Stein was not penalized merely for the resetting of a retailer's wine shelves; it does not dispute the Director's findings that Stein used its influence to depress the sales of its competitors by moving their products to poor display locations. The Director concluded that Stein, by the offer of extensive services, induced three retail chains to purchase Stein products to the exclusion of other wholesalers' products. This is exactly the type of wholesaler influence that both federal and Idaho law intended to prohibit. Compliance with

federal law, therefore, would not obstruct the accomplishment and execution of the full purposes of state law. For these reasons, there is no conflict between Idaho and federal law.

Stein argues that the court should follow two Fifth Circuit decisions invalidating Bureau rulings on Twenty-first Amendment grounds. *Wine Industry of Florida, Inc. v. Miller*, 609 F.2d 1167 (5th Cir.1980); *Castlewood International Corp. v. Simon*, 596 F.2d 638 (5th Cir.1979), *vacated and remanded*, 446 U.S. 949, 100 S.Ct. 2914, 64 L.Ed.2d 806, *reinstated*, 626 F.2d 1200 (5th Cir.1980) (per curiam). In our view, both *Castlewood* and *Wine Industry* have improperly applied the threshold conflict standard that has been required by the Supreme Court and applied by Ninth Circuit decisions. *See, e.g., Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984); *Zamborsky*, 650 F.2d at 200. The *Wine Industry* panel acknowledged that the *Castlewood* court had not applied the conflict test established by the Supreme Court, but held itself bound by the precedent established in *Castlewood*. *Wine Industry*, 609 F.2d at 1172. This court, however, is not persuaded by the Fifth Circuit decisions and will adhere to the Supreme Court test of conflict.

## IV.

Stein raises two additional points in its petition. Stein argues that, in order to be found in violation of the tied house provision of the Act, the Director was required to find that Stein convinced retailers to purchase its products by engaging in conduct specifically prohibited in the Act or other law. Nothing in the language of the statute or in the legislative history of the Act, however, supports this interpretation. *Cf. Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) ("Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.").

In addition, Stein argues that the Director erred in finding its conduct a willful violation of the Act. See 27 U.S.C. § 204(e), (i) (1982) (permit suspension permissible only if permit holder has wilfully violated a condition of the Act). Stein, however, was informed by the Bureau in 1979 and again in 1981 that its activities violated federal law. Nevertheless, Stein persisted in that conduct until the order to show cause was issued in 1982. These facts are sufficient to support the Director's findings that Stein acted with an intentional disregard of the statute or plain indifference to its requirements. *Arrow Distilleries, Inc. v. Alexander,* 109 F.2d 397, 406 (7th Cir.), *cert. denied,* 310 U.S. 646, 60 S.Ct. 1095, 84 L.Ed. 1412 (1940).[3]

For the forgoing reasons, the Order of the Director of the Bureau is AFFIRMED.

---

**3.** Stein argues that it did not act willfully because it believed that it had the right, under *Castlewood* and the Twenty-first Amendment, to follow state law rather than federal law. Whatever Stein's beliefs about the appropriate application of federal and state law, it knew that the *Bureau* considered its actions to be a violation of federal law. At a minimum, Stein was indifferent to the requirements of federal law, and this is sufficient to establish willfulness. *See Distilled Brands, Inc. v. Dunigan,* 222 F.2d 867, 870 (2d Cir.1955) (evidence that wholesaler continued to engage in tie-in sales after it had been warned that the government regarded such sales as illegal was sufficient to establish willfulness).