MANGO BOTTLING, INC., d/b/a Tooter Lingo Liqueurs, Appellant,

v.

TEXAS ALCOHOLIC BEVERAGE COMMISSION and Doyne Bailey, Appellees.

No. 03–97–00498–CV.

Court of Appeals of Texas, Austin.

July 16, 1998.

E. Eugene Palmer, Austin, for Appellant.

Dan Morales, Atty. Gen., W. Reed Lock-hoof, Asst. Atty. Gen., Austin, for Appellees.

Before POWERS, KIDD and B.A. SMITH, JJ.

POWERS, Justice.

Mango Bottling, Inc., a foreign corporation, appeals from a district-court judgment that refused the company's application for writ of mandamus against the Texas Alcoholic Beverage Commission and its administrator Doyne Bailey. We will affirm the judgment.

## THE CONTROVERSY

Mango holds a non-resident seller's permit. issued by the Commission. Wishing to bring certain liqueurs into the State for sale, Mango submitted to the Commission for approval samples of the spirits, the containers in which they would be sold, and the labels affixed to them.[1]

The liqueur in each instance was held in thirty tubes of twenty-five milliliters (ml) each and each tube was labeled "Not for individual package sale." The set of thirty tubes was boxed in a cardboard base and covered by a hard plastic cap. The whole was shrink-wrapped in clear plastic and labeled as a single container of 750 ml (30 tubes × 25 ml).

Section 101.46 of the Alcoholic Beverage Code forbids the introduction of liquor into

---

1. The applicable provisions of the Alcoholic Beverage Code are as follows:

§ 101.46. Containers of Liquor: Minimum Capacities
(a) Except as provided by Subsections (b), (c), and (d) of this section, no person may import, sell, or possess with intent to sell any liquor in a container with a capacity of less than six fluid ounces.

§ 5.39. Regulation of Liquor Containers
The commission shall adopt rules to standardize the size of containers in which liquor may be sold in the state.... To accommodate the alcoholic beverage industry's conversion to the metric system, the commission shall adopt rules permitting the importation and sale of liquor in metric-sized containers as well as in containers sized according to the United States standard gallon system.

§ 37.11. Submission of Samples and Labels
(a) Before a nonresident seller's permittee may ship distilled spirits into this state, he shall furnish the commission samples of each brand, properly labeled and in the containers in which they are to be sold....
(b) ... If the label, container, and contents are found to be in compliance, the commission shall issue the permittee a certificate to that effect.

§ 101.48. Commission's Regulatory Authority
Sections 5.39 and 5.40 of this code relate to the commission's authority to regulate liquor containers and beer container deposits.

Tex. Alco. Bev.Code §§ 5.39, 37.11, 101.46, .48 (West 1995).

the State for sale "in a container with a capacity of less that six fluid ounces." Tex. Alco. Bev.Code Ann. § 101.46 (West 1995). Viewing each tube as the "container" intended by this statute, the Commission found Mango's container did not comply with Section 101.46 and refused on that ground to authorize importation of the liqueurs into Texas.

Mango brought the present action in district court to compel issuance of the permit by writ of mandamus. From the district-court judgment refusing such relief, Mango appeals to this Court.

### DISCUSSION AND HOLDINGS

In its first point of error, Mango contends the Commission abused its discretion because importation of the liqueurs was exempt, under the Commission's own substantive rules, from the six-ounce minimum capacity prescribed for containers in Code section 101.46. The rules provide as follows:[2]

> Section 45.19. Container and Fill Standards Required
>
> No permittee ... shall sell or ship or deliver for sale or shipment, or otherwise introduce into the commerce of this state, ... any distilled spirits in bottles unless such distilled spirits are bottled in conformity with Sections 45.20–45.22 of this title.
>
> Section 45.21. Standards of Fill
>
> (a) *Authorized standards of fill.* The standards of fill for all distilled spirits, whether domestically manufactured, domestically bottled, or imported, subject to the tolerances allowed in this section, shall be as follows:
>
> [one gallon to 1/10 pint]
>
> (Caution: Possession and sale of sizes less than½ pint are subject to special restrictions in the Alcoholic Beverage Code).
>
> In addition to the above stated container sizes and standards of fill authorized for the importation and sale of distilled spirits in this state *any other container sizes and standards of fill based on international metric units of measure and authorized by the United States Bureau of Alcohol, Tobacco and Firearms are hereby authorized, however, no container or standard of fill prohibited by the Alcoholic Beverage Code shall be construed to be permitted by this section.*
>
> Section 45.22. Design and Fill Exceptions
>
> * * *
>
> (b) [Section] 45.21 of this title (relating to Standards of Fill) *shall not apply to ... liqueurs.*

■ We do not believe the Commission failed properly to construe and apply its rules. The parties stipulated that the spirits in question were liqueurs within the meaning of section 45.22(b) and that the Federal Bureau of Alcohol, Tobacco and Firearms authorized shipment and sale of the 750 ml package, viewing the package itself as the liqueur "container." The exemption established in Rule 45.22(b) extends by its own terms, however, solely to the requirements of Rule 45.21(a). That rule, in turn, expressly cautions that the sale of sizes less than one-half pint are subject to special restrictions in the Code. Rule 45.21(a) expressly declares, moreover, that nothing therein shall be construed as authorizing a container size prohibited by the Code itself. And nothing in rule 45.22(b), creating the exemption upon which Mango relies, purports to alter the minimum-container size prescribed in Code section 101.46, the statutory basis for the Commission's action in denying the permit Mango requested.

We hold the Commission did not misconstrue its rules and, therefore, did not abuse its discretion in the manner claimed. We overrule point of error one.

Mango complains in its second point of error that the doctrine of federal preemption forecloses the Commission's decision based on Code section 101.46 because the Bureau of Alcohol, Tobacco and Firearms had approved the package on the ground that it was a 750 ml container. Mango argues as follows: (1) Congress expressly preempted the field in its

---

**2.** 16 Tex. Admin. Code §§ 45.19, .21 (emphasis added), .22 (emphasis added) (West 1997).

adoption of the metric system in 15 U.S.C. § 205b (West 1997) under which the Bureau acted by authorizing interstate sale of the package as a 750 ml container under section 5.47, title 27 of the Code of Federal Regulation; and (2) the Commission's rules and its construction of the Code are invalid to the extent compliance with both federal and state law is impossible or state law impedes a congressional objective. *See Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992); *International Paper Co. v. Ouellette*, 479 U.S. 481, 493, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987); *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 699, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984).

■ Congress has unquestioned power to regulate interstate commerce and a state has unquestioned power to regulate the importation of intoxicating liquors for delivery or use in the state. *See U.S. Const.* art. I, § 8, cl. 3; amend. XXI, § 2. The resulting tension is obvious. Mango argues skillfully along the line of demarcation the courts have drawn between the two constitutional provisions. We conclude, however, that the Commission acted within the scope of regulation allotted the states in the Twenty-first Amendment.

■ If the Code or the Commission's regulations or decision had attempted to regulate transactions outside the boundaries of Texas, neither could stand; Texas has, however, "virtually complete control" over the importation and sale of intoxicating liquor within its boundaries. *North Dakota v. United States*, 495 U.S. 423, 431, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990). Nothing in the Code provisions or Commission rules applicable here may be construed to be an attempt to regulate intoxicating liquors outside the State. *Cf. Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 333–34, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964). And the applicable Code and rule provisions do not discriminate against non-residents. The six-ounce restriction applies equally to the importation of liquor into the State for sale and to its possession in the State for sale. *Cf. Cooper v. McBeath*, 11 F.3d 547, 552 (5th Cir.1994).

At bottom, Mango contends the State can have no legitimate interest in regulating container size simply because the Bureau regulates container size. The legitimacy of the State's regulation depends first upon whether the regulation lies within the core of the State's power under the Twenty-first Amendment. *North Dakota*, 495 U.S. at 432, 110 S.Ct. 1986.

In *North Dakota*, the State statutes required out-of-state shippers to file monthly reports and to affix a label to each bottle of liquor sold at military bases in the State. The Court held the requirements to be "necessary components of the [State's] regulatory regime" and thus within the State's core power under the Twenty-first Amendment. *Id.* We believe the Code provisions and the Commission's rules pertaining to container size are not outside the core power of the State here.

■ Nor do we believe the Code and Commission rules conflict with an affirmative command of Congress or related Bureau regulations. In areas of coincident federal and state regulation, we are cautioned not to seek for "conflicts between state and federal regulations where none clearly exists." *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 446, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960). Nevertheless, a conflict does arise when compliance with both federal and state regulations is a physical impossibility or when the state regulation constitutes an obstacle to effectuating a purpose underlying the federal regulations. *Capital Cities Cable, Inc.*, 467 U.S. at 699, 104 S.Ct. 2694; *Stein Distributing Co., Inc. v. Department of Treasury Bureau of Alcohol, Tobacco & Firearms*, 779 F.2d 1407, 1411, (9th Cir.), *appeal dismissed, cert. denied*, 476 U.S. 1111, 106 S.Ct. 1963, 90 L.Ed.2d 649 (1986). We do not believe the facts and the law in the present controversy give rise to a conflict of that nature. It is not suggested that it is physically impossible for Mango to package its liqueurs in containers that comply with both federal and State requirements—for example, in containers of 200 ml. That being the case, we see in the Texas regulation of container size nothing that poses an obstacle

to any purpose underlying the federal administrative regime.

We hold accordingly and overrule Mango's second point of error.

Given our holdings above, we do not reach Mango's third point of error concerning the propriety of relief by writ of mandamus.

We affirm the trial-court judgment.